## In re KINROSS.

[Cite as *In re Kinross* (1992), 84 Ohio App.3d 335.]

Court of Appeals of Ohio,
Hamilton County.

No. C–910904.

Decided Dec. 16, 1992.

*Philip E. Pitzer; Lindhorst & Dreidame* and *Michael F. Lyon,* for appellant Philip E. Pitzer.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Scott C. Kirschman,* Assistant Prosecuting Attorney, urging affirmance for *amicus curiae,* Board of County Commissioners, Hamilton County, Ohio.

HILDEBRANDT, Judge.

Appellant, Philip E. Pitzer, appeals from the judgment of the Probate Division of the Hamilton County Court of Common Pleas finding him in contempt of the court's order of October 15, 1991. The court imposed a fine in the amount of $500 per day.[1] For the reasons that follow, we affirm the probate court's judgment finding Pitzer in contempt, but reverse the amount of the fine imposed on him.

The record discloses that Sandra Kinross died intestate and that her husband, Ronald C. Kinross, Sr., ("Kinross") was appointed administrator of her estate by the probate court. Thereafter, Kinross engaged Pitzer, Gary R. Lewis, Jeffrey

---

1. The court below found that Pitzer refused to comply with the October 15, 1991 order in open court.

R. Lewis ("the Lewises") and William M. Gustavson, Ohio attorneys, to prosecute a wrongful-death action on behalf of the estate, as well as on behalf of Kinross individually and in his capacity as guardian of his minor children. Pitzer was not the probate attorney for the estate. At some time subsequent to the agreement between Pitzer, the Lewises and Kinross, Pitzer entered into an oral agreement with the Lewises that concerned the Lewises' interest in any attorney fees generated by the wrongful-death action.

The Lewises filed of record a notice to Kinross of their claim for attorney fees in connection with the wrongful-death action on February 6, 1991. On February 27, 1991, Kinross applied to the trial court for approval of an offer of settlement of the wrongful-death claim. Kinross further sought authority to allow Pitzer a reasonable attorney fee in the amount of $680,000 and expenses in the amount of $60,000. An entry approving the settlement, including Pitzer's fee and expenses, was journalized. The question of the distribution of the remaining settlement funds was set for hearing on March 14, 1991. The Lewises had no notice of the proceedings of February 27, 1991, regarding the approval and disbursement of the attorney fees and expenses, which, by law, they were required to receive by virtue of having filed a claim.

On March 14, 1991, the trial court entered an order distributing the remaining settlement funds to the beneficiaries. Also, on March 14, the Lewises filed a motion to set aside the trial court's entry of February 27, 1991, approving the distribution of the attorney fees and expenses to Pitzer. By entry of April 3, 1991, the court imposed a constructive trust on the $740,000 which had been distributed to Pitzer. In the entry, the court erroneously referred to its entries of February 27, 1991, and March 14, 1991, as "referee's reports."

On October 15, 1991, an entry was placed of record in which Pitzer was ordered to account for the funds distributed to him by October 21, 1991, and to return such funds to Hamilton County from the Florida institutions in which they were held. Jeffrey R. Lewis filed a pleading on October 30, 1991, in which he alleged that Pitzer was in contempt of the court's October 15 order. That pleading generated a hearing before the trial court during which Pitzer challenged the court's *in rem* and *in personam* jurisdiction. During that hearing, Pitzer acknowledged that he did not intend to comply with the court's October 15 order on jurisdictional grounds. Thereafter, the court placed of record the contempt order from which Pitzer brings this timely appeal.

Before we begin our analysis, we note that Pitzer is the only participant in the proceedings below who has filed a brief with this court. The Hamilton County Board of Commissioners has filed an *amicus curiae* brief urging affirmance.[2]

---

2. We are unsure of the nature of the board of commissioners' interest in this matter.

■ In his first assignment of error Pitzer argues that the trial court did not have subject-matter jurisdiction over the fee dispute between the attorneys representing Kinross in the wrongful-death action. We disagree.

In *In re Guardianship of Jadwisiak* (1992), 64 Ohio St.3d 176, 593 N.E.2d 1379, James Jadwisiak, an Ohio resident, was rendered a quadriplegic with brain damage as a result of his motorcycle accident in Florida. James's mother, Josephine, was appointed his guardian by the Probate Court of Ottawa County, Ohio. She was immediately granted court authority to engage local counsel to represent the ward in his claim for damages. The action was expanded to include a products-liability claim against the manufacturer of the helmet worn by the ward at the time of the accident. Local counsel then engaged Peter W. Martin, a Florida lawyer, to pursue that claim in a Florida district court. Martin reached a settlement with the helmet manufacturer. Without the knowledge of local counsel or the court, Martin came to Ohio and had the guardian execute the documents necessary for the disbursement of the settlement funds. Martin retained that portion of the funds designated for attorney fees.

Upon learning of Martin's actions, local counsel requested that the court hold a hearing for the purpose of approving the settlement and disbursing the funds. The court held a hearing on the motion, without notice to Martin, after which the court ratified the guardian's execution of the settlement documents. The court further ordered Martin to remit the funds he held to the court in order to avoid a breach of his employment contract with local counsel. The court also ratified and confirmed, with some modification, the fee agreement between Martin and local counsel. A copy of the court's order was sent to Martin by certified mail.

Martin did not remit the funds, prompting local counsel to move for a finding of contempt. The court, concluding that it had personal jurisdiction over Martin because of his earlier presence in Ottawa County, found him in contempt. The court ordered that Martin could purge his contempt by paying one-half of the funds into court. Martin was ordered to appear at a show-cause hearing. Martin did not appear at the hearing, but he was represented by counsel. The court found Martin in contempt, imposed a fine and ordered Martin's confinement. The court of appeals affirmed the probate court's judgment.

In affirming the lower courts in part, the Ohio Supreme Court first addressed the issue of the probate court's subject-matter jurisdiction over the entire amount of the settlement funds, where there was a dispute over the funds concerning the division of attorney fees. The court held in paragraph one of the syllabus:

"A probate court, in order to maintain control over any personal injury settlement entered into on behalf of a ward under its protection, has subject matter jurisdiction over the entire amount of settlement funds, which includes attorney fees to be drawn therefrom." *Id.*

The court noted that the probate court has exclusive jurisdiction under former R.C. 2101.24 to settle a guardian's accounts. The court further noted that:

"R.C. 2111.14(E) provides that a guardian may bring suit for his ward when such suit is for the best interests of the ward. The guardian also may adjust and settle the claim with the advice, approval and consent of the probate court. R.C. 2111.18." *Id.* at 180, 593 N.E.2d at 1383.

The court also observed:

"At the core of this case is the requirement that a probate court maintain control over any personal injury settlement entered into on behalf of the ward under the probate court's protection. See R.C. 2111.18." *Id.* at 181, 593 N.E.2d at 1383.

The court then held:

"We hold that a probate court, in order to maintain control over any personal injury settlement entered into on behalf of a ward under its protection, has subject matter jurisdiction over the entire amount of settlement funds, which includes attorney fees to be drawn therefrom. The probate court had the inherent power to order, *ex parte,* appellant to remit the ward's settlement proceeds in his possession so that it could carry out its statutory obligations. The entire settlement of over $1,000,000 was part of the ward's estate. Without the total settlement proceeds, the probate court could not maintain control over the settlement as required by R.C. 2111.18. In addition, as already stated, although attorney fees are appropriate, they may be drawn from the ward's estate only after the probate court approves the fees. Therefore, prior to the order, the probate court was unable to perform its statutory duties since it never had the ward's total settlement proceeds in its possession. Appellant's argument that his portion of the attorney fees was never a part of the ward's estate is, therefore, without merit." *Id.* at 181, 593 N.E.2d at 1383–1384.

As previously noted, the trial court approved Kinross's application to approve the settlement and to pay Pitzer's attorney fees and expenses on February 27, 1991. Subsequent to the payment of those items, the Lewises filed a myriad of pleadings, including an application to set aside the trial court's order of distribution. The trial court's entry of May 2, 1991, reflects that a hearing on that and other pleadings was held, and that Pitzer and his counsel were among those in attendance. In the entry the court ordered that the matter was to be referred to a court referee for the purpose of holding a hearing, receiving evidence and issuing a recommendation on the division of the wrongful-death attorney fees among Pitzer, the Lewises and Gustavson.

We conclude that by issuing the order of April 3, 1991, which imposed a constructive trust on the attorney fees and expenses distributed to Pitzer, and the

order of May 2, 1991, which referred the matter of attorney fees to a referee, the probate court in effect vacated its earlier entry distributing the attorney fees and expenses to Pitzer.[3] The trial court had authority to do so because the original order was entered erroneously due to the lack of notice to the Lewises. At that point, no order of distribution of attorney fees and expenses existed. Therefore, the holding of *Jadwisiak* is applicable to the instant case. When the probate court in effect vacated its order distributing the attorney fees and expenses to Pitzer, Pitzer was then in the same position as Martin in *Jadwisiak*, and was required to comply with the court's order to return the estate funds to the court.

For the reasons set forth above in our discussion of *Jadwisiak, supra*, we hold that the trial court had subject-matter jurisdiction over the fee dispute between Pitzer and the Lewises. Accordingly, we overrule Pitzer's first assignment of error.[4]

In his second assignment of error, Pitzer maintains that the trial court did not have personal jurisdiction over him as attorney for Kinross in the wrongful-death action. We do not agree.

As discussed above, the court held in *Jadwisiak, supra*, that the probate court had the inherent power to issue an *ex parte* order for Martin to remit the funds he held to the court. Furthermore, the record in this case reflects that Pitzer, an attorney practicing within the jurisdictional boundaries of the court and subject to its subpoena power, was subpoenaed to and attended certain hearings before the trial court. Additionally, Pitzer testified at the hearing that generated the court's order of October 15, 1991, of which he was thereafter found in contempt. In fact, the record reflects that Pitzer had notice of the order, as he filed objections to it on October 16, 1991. For these reasons, Pitzer's second assignment of error is overruled.

For his third and final assignment of error, Pitzer claims that the lower court erred by finding him in contempt and fining him $500 per day until he complied with the court's order.[5] The assignment has merit in part.

---

3. We do not decide whether a constructive trust was the proper vehicle to be employed by the probate court under the circumstances of this case. We note only that the effect of the April 3 order, coupled with the May 2 order, was the vacation of the court's earlier entries distributing the attorney fees and expenses to Pitzer.

4. Under this assignment, Pitzer also challenges the lower court's rulings concerning the introduction into evidence at the contempt hearing of certain exhibits. None of those exhibits, either admitted or proffered, was presented to this court at the time the appeal was submitted.

5. Pitzer also claims under this assignment of error that the trial court erred by imposing a preponderance of evidence as the burden of proof, rather than the standard of clear and convincing evidence. While we question whether the issue was properly preserved for appeal,

Pitzer initially claims that he could not be held in contempt of the court's order because he had taken legal title to the funds from the fiduciary. We disagree. As we observed in our discussion of the first assignment, the probate court in effect vacated its order distributing the funds to Pitzer. At that point, as in *Jadwisiak*, there was no court order of distribution of attorney fees. Additionally, the *Jadwisiak* court stated that the probate court properly enforced its order by a contempt proceeding. The court further cited R.C. 2101.23, which provides:

"The probate judge may keep order in his court and has authority throughout the state to compel performance of any duty incumbent upon any fiduciary appointed by or accounting to him. The probate judge may punish any contempt of his authority as such contempt might be punished in the court of common pleas." *Jadwisiak, supra,* 64 Ohio St.3d at 181, 593 N.E.2d at 1384.

■ We agree with that aspect of this assignment of error that protests the fine imposed by the trial court.

R.C. 2705.01, direct contempt, reads:

"A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

R.C. 2705.02, which refers to indirect contempt, states:

"A person guilty of any of the following acts may be punished as for a contempt:

"(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer;

"(B) Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions;

"(C) A failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required;

"(D) The rescue, or attempted rescue, of a person or of property in the custody of an officer by virtue of an order or process of court held by him;

"(E) A failure upon the part of a person recognized to appear as a witness in a court to appear in compliance with the terms of his recognizance."

The purpose of the trial court's hearing of November 26, 1991, was for Pitzer to show cause why he was not in contempt of the October 15 order. In its judgment

---

we hold that under either standard Pitzer was in contempt of the court's order of October 15, 1991.

entry of December 2, 1991, the court found that Pitzer had refused, in open court, to comply with that order.

From our review of the above entry and Pitzer's conduct, as demonstrated by the record, we conclude that the act for which Pitzer was punished is contemplated under R.C. 2705.02 as indirect contempt. Accordingly, we sustain the third assignment of error as it concerns the fine imposed by the trial court, because it does not fall within the punishment prescribed for a first indirect contempt. See R.C. 2705.05. The assignment is overruled in all other respects.

In conclusion, we hold that the court below had *in rem* jurisdiction over the fee dispute and *in personam* jurisdiction over Pitzer. Further, the trial court did not err by finding Pitzer in contempt of its October 15, 1991 order. However, Pitzer was properly found guilty of a first indirect contempt and therefore the court erred in the fine it imposed on Pitzer. Accordingly, the trial court's judgment is affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion and law.

*Judgment accordingly.*

DOAN, P.J., and GORMAN, J., concur.