**In re ESTATE OF HALLER.**

[Cite as *In re Estate of Haller* (1996), 116 Ohio App.3d 866.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 96APF04–457 and 96APF04–460.

Decided Dec. 24, 1996.

*Wiles, Doucher, Van Buren & Boyle Co., L.P.A., Jay B. Eggspuehler* and *Richard D. Bringardner,* for appellee Bruce H. Burkholder, Administrator, W.W.A., for the Estate of Russell T. Haller.

*Andrea R. Yagoda* and *Mark Sladoje, Jr.,* for appellant Jack R. Haller.

*Robins, Preston, Beckett, Taylor & Gugle Co., L.P.A.,* and *John A. Sentz, Jr.,* for appellant Sharon P. O'Donnell.

LAZARUS, Judge.

Appellants, Jack Russell Haller and Sharon O'Donnell, appeal from a March 15, 1996 decision and judgment entry from the Probate Court of Franklin County

approving an application for attorney fees filed by appellee, Bruce H. Burkholder, Administrator, W.W.A., for the law firm of Wiles, Doucher, Van Buren & Boyle ("Wiles firm") in the amount of $39,887.41. Appellants assert the following three assignments of error:

"1. The approval of the application for fees by the probate court for attorney fees in the amount of $39,887.41 was against the manifest weight of the evidence and contrary to law.

"2. The trial court abused its discretion in approving the application for fees in the amount of $39,887.41.

"3. The trial court erred and abused its discretion in limiting cross-examination on the basis of privilege."

On April 14, 1992, an application to probate the will of Russell T. Haller was filed in the Franklin County Probate Court. Sharon P. O'Donnell, daughter of the decedent, and Randy J. Haller, grandson of the decedent, were appointed co-executors. Jack Haller, decedent's son, sought the removal of the co-executors, alleging a conflict of interest with respect to decedent's creation of approximately $300,000 in joint and survivorship accounts with various family members, including themselves. The co-executors were removed, and Bruce H. Burkholder was appointed Administrator, W.W.A. Burkholder, who admitted he is not an expert in probate matters, employed the Wiles firm, a law firm in which he was a partner, to assist him in the administration of the estate.

On the same day that the probate court issued its order providing for the removal of the co-executors, Jack Haller filed a declaratory judgment action seeking to have certain pre-death transfers set aside and made part of the estate. In his complaint, Jack Haller alleged that certain accounts and real estate were transferred during a period immediately preceding the death of Russell T. Haller, that the decedent was suffering from a debilitating brain tumor, that the decedent was not competent to make the transfers complained of, and that the transfers were made as a result of undue influence by the decedent's daughter, Sharon O'Donnell, and the decedent's grandson, Randy Haller. See *Jack R. Haller v. Sharon P. O'Donnell* (Sept. 9, 1993), Franklin App. No. 93AP–216, unreported, 1993 WL 360372.

Burkholder, as administrator, became involved in the declaratory judgment action at the request of Jack Haller's attorney. Initially, Burkholder agreed to investigate the allegations because if they had merit the value of the estate would be dramatically increased. However, by the time the action was on appeal to this court, Burkholder had sided with O'Donnell and Randy J. Haller. This court reversed and remanded summary judgment in favor of O'Donnell and Randy J. Haller. Upon remand, the matter was resolved by the parties.

On July 21, 1994, O'Donnell filed an application for removal of Burkholder and the Wiles firm. On August 1, 1994, Burkholder filed an application for fees in the amount of $39,887.41. Jack Haller joined in the request for removal of Burkholder and his firm on August 22, 1994. On June 30, 1995, the probate court held an evidentiary hearing on the disputed fee matter.

At the hearing, Burkholder was the only witness to testify in support of the fee application. No expert witness testified on behalf of the administrator, nor did any of the attorneys from the Wiles firm other than Burkholder testify as to the work performed or the reasonableness thereof. In support of the fee application, Burkholder submitted a sixty-seven-page itemization of legal services performed by the Wiles firm totaling in excess of four hundred seventy-two hours over a two-year period, a large portion of which was spent on litigation or handling contentious matters of estate administration.

Burkholder stated that the Haller estate was "an absolute nightmare" to administer. He testified that although this could have been a simple estate administration, due to the contentious nature of the beneficiaries, the estate administration was the most difficult family matter he had been involved in during his fifteen years practicing law.

Burkholder testified that his difficulties with the heirs, Jack Haller and O'Donnell, began after he viewed and inventoried certain personal property of the decedent. Burkholder decided that packing, shipping, and storing the property was cost-prohibitive, and he permitted the personal property to remain in the decedent's residence. Jack Haller telephoned Burkholder at home to indicate that he was extremely dissatisfied with the decision to allow the personal property to remain in the residence. According to Burkholder, Jack Haller made a number of disparaging and negative comments, "threatening my position and status with the Bar Association." As a result of that conversation and the continuing animosity between Jack Haller and his sister, Burkholder assigned additional duties to the Wiles firm, requiring all legal formalities to be followed and instructing the firm to become more involved in litigation between the beneficiaries pertaining to the estate.

The heirs presented the testimony of attorney Thomas Kilbane, who characterized the case as a simple estate with a nuisance being the declaratory judgment action. Kilbane questioned numerous billing items ranging from the necessity for one hundred nineteen attorney conferences to excessive copying costs. Kilbane was of the opinion that the administration of the estate had not been handled in a timely or efficient manner. He testified that the estate was inappropriately involved in many matters that did not benefit or involve the estate. He opined that the case was mishandled and that a reasonable fee would be $11,994.47.

The probate court issued a decision finding that the $39,887.41 in fees applied for were reasonable and should be paid. This appeal followed.

In their first and second assignments of error, appellants assert the probate court's decision awarding the full amount of the fee application was against the manifest weight of the evidence and an abuse of discretion because the record did not establish that the fees were reasonable, necessary, and performed for the benefit of the estate.

 It is well settled that in addressing whether a judgment is against the manifest weight of the evidence an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276. R.C. 2113.36 provides that reasonable attorney fees paid by the executor of an estate to an attorney employed in the administration of the estate are to be allowed as an administration expense. R.C. 2113.36 gives exclusive original jurisdiction to the probate court to determine the reasonableness of attorney fees. *Watters v. Love* (1965), 1 Ohio App.2d 571, 30 O.O.2d 595, 206 N.E.2d 39. The burden is upon the attorney to "introduce into the record sufficient evidence of the services performed and of the reasonable value of such services." *In re Estate of Verbeck* (1962), 173 Ohio St. 557, 559, 20 O.O.2d 163, 164, 184 N.E.2d 384, 385. See, also, *In re Estate of Schaffer* (1995), 101 Ohio App.3d 620, 623, 656 N.E.2d 368, 370–371.

It has also been said:

"Fees which are reasonable must be reasonable both from the standpoint of the attorney rendering the services and from the standpoint of the estate out of which payment is being made. The ultimate determination of reasonableness must take into consideration all the factors relating to reasonableness of the fees in the particular case. The facts and circumstances vary so much from case to case that it is impossible to set forth an iron-clad rule other than the one that reasonable value must be substantiated by the evidence in each case." *Watters, supra,* 1 Ohio App.2d at 578–579, 30 O.O.2d at 599, 206 N.E.2d at 45.

 While the better practice may be to introduce expert testimony as to the reasonableness of the fees, see, *e.g., Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter* (1995), 100 Ohio App.3d 313, 323, 653 N.E.2d 1245, 1251–1252; *Lopeman v. Boury, Inc.* (Aug. 2, 1988), Franklin App. No. 87AP–1228, unreported, 1988 WL 81852, this court has previously held that a probate court judge "is qualified to make a determination, upon evidence, of the reasonable attorney fees to be paid from the estate without the necessity of expert testimony." *Id.,* 1 Ohio App.2d at 577, 30 O.O.2d at 598, 206 N.E.2d at 44. If

expert testimony is presented, the credibility of such witnesses and the weight to be given it is for the probate court to determine. *Id.* Appeal can be only on questions of law, *i.e.*, whether the award of fees is against the manifest weight of the evidence or contrary to law. *Id.*

In the instant case, the probate court considered the itemized statement and the testimony at the June 30, 1995 hearing. The probate court found that the estate administration had been plagued by acrimony between the beneficiaries from the start, precipitating an extensive amount of litigation. The probate court also noted that a large portion of the fees was directly attributable to the civil litigation or handling of contentious matters within the estate administration. Based on the foregoing law and the facts before the probate court, we find that the probate court did not err in approving the fee application. Appellants' first and second assignments of error are not well taken.

In their third assignment of error, appellants submit that the probate court erred in sustaining objections during the hearing on the basis of attorney-client privilege. On three occasions during his testimony, Burkholder asserted that conversations or memoranda between him and the Wiles firm were subject to the attorney-client privilege. Appellants assert that the privilege was not available to the Administrator, W.W.A., because the Wiles firm was retained to assist in the administration of the estate and not to represent the personal interests of the administrator.

In the first and second instances, appellants requested that Burkholder produce the office file and any memos relating to discussions with counsel. The probate court partially sustained an objection to a request. The probate court stated:

"The attorney-client privilege would relate. However, some of the matters may be privileged. Some of them may not be. If you want them to, I guess, I would instruct—I will partially sustain your objection and state that you can examine and identify matters which are—you believe are privileged, mark those as privileged. If you want the Court to examine them in camera, we will then do so, and you can submit the balance of the file to counsel that is requesting it. Would that satisfy you?

"[COUNSEL FOR APPELLANT]: For now, yes."

Our review of the record does not reveal any subsequent request by appellants for an *in camera* review of allegedly privileged materials. Additionally, the probate court noted that the parties had ample time for discovery, and the hearing was not the appropriate time to seek each item to which the appellee was asserting privilege.

■ To the extent appellants failed to request an *in camera* review of internal memoranda, the issue is waived. In the third instance, the probate court sustained another objection to a question as to the substance of individual discussions between Burkholder and his attorneys regarding the number of hours charged to the administration of the estate. Any alleged error in sustaining the objection is harmless given the detailed invoice containing an itemization of all tasks and time expended in the administration of the estate. The third assignment of error is not well taken.

Based on the foregoing, all three of appellants' assignments of error are overruled, and the judgment of the Franklin County Probate Court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT, J., concurs separately.

PEGGY BRYANT, Judge, concurring separately.

Although I concur in the result reached by the majority, I write to express my reservations concerning a couple of points encompassed by the majority opinion.

Initially, I find troublesome the precedent from this court suggesting that the applicant for an award of attorney fees need not produce any evidence of necessity or reasonableness in the probate court. Although most professionals are required to present such evidence in support of claims for payment, our precedent exempts attorney fees awards, concluding that the probate judge has the expertise to determine those issues without such evidence. Without evidence of reasonableness or necessity, however, those opposing the application are left to speculate about the trial court's probable grounds for finding the requested fees are either reasonable or necessary. Given the contested nature of the proceedings, an applicant for an award of attorney fees should have the minimal obligation of producing evidence that the fees requested are both reasonable and necessary. Nonetheless, because the precedent from this court indicates to the contrary, and in an effort to maintain consistency, I reluctantly conform my opinion in this case to that precedent.

Compounding my difficulties with the majority opinion is the trial court's ruling on the question of privilege, as raised in the second assignment of error. Given this court's precedent eliminating the administrator's need to present evidence that the requested fees are reasonable and necessary, the trial court should hesitate to limit cross-examination in the areas that allow the opposing party an opportunity to probe the proffered support for an award of fees. Here, however, in the first two instances cited in the majority opinion, appellants failed to request

the *in camera* inspection that the trial court afforded them; as a result, appellants in effect abandoned what may have been a valid avenue of cross-examination.

In the third instance, however, the majority finds no error in the trial court's having limited cross-examination that sought to delve into the subject matter of internal conferences between the administrator and his law firm. I find the inquiry permissible, at least in part. Nonetheless, given the record in this case, I am unable to find the error to be prejudicial: the administrator presented ample evidence in support of his application, which the trial court clearly found persuasive.

In sum, given the precedent from this court which allows a probate judge to award attorney fees without evidence that the fees are reasonable and necessary, the trial court should allow a full cross-examination of the administrator. To do otherwise limits the party opposing the award in its attempts to point out any problems in the fee application. Nonetheless, because I am unable to find prejudice on this record, I concur in the result reached in the majority opinion.

DESHLER, J., concurs in the foregoing concurring opinion.