PUTNAM, Appellant,

v.

HOGAN, Exr., et al., Appellees.

[Cite as *Putnam v. Hogan* (1997), 122 Ohio App.3d 351.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE12–1640.

Decided Aug. 14, 1997.

*Scott E. Smith Co., L.P.A.,* and *Scott E. Smith,* for appellant.

*Draper, Hollenbaugh & Briscoe Co., L.P.A.,* and *H. Ritchey Hollenbaugh,* for appellee Thomas N. Taneff.

*Per Curiam.*

Plaintiff-appellant, Deana L. Putnam, appeals from a judgment of the Franklin County Court of Common Pleas which referred attorney Thomas Taneff's claim for fees against plaintiff to binding arbitration before the Ohio State Bar Association pursuant to DR 2–107(B). Because the trial court erred in referring the fee dispute between plaintiff and Taneff to binding arbitration before the Ohio State Bar Association, we reverse the judgment of the trial court and remand for further proceedings.

The lengthy and tortured history of this action began on May 5, 1993, when plaintiff filed two complaints in the common pleas court: one in the general division, contesting the *inter vivos* trust established by Dean E. Walcutt, and the other in the probate division, contesting Walcutt's will. On June 9, 1993, plaintiff discharged one of her attorneys, Thomas Taneff. Taneff submitted a bill to plaintiff for $21,656 for costs and attorney fees, which plaintiff refused to pay. In September 1994, Taneff filed a Notice of Attorney's Lien on Walcutt's estate.

After both trial and appellate proceedings, the parties on January 29, 1996, filed an agreed judgment entry indicating that the *inter vivos* trust and will contest actions had been settled and dismissed. On the same day, an entry was filed indicating that Taneff had agreed to release his lien on the Walcutt estate in exchange for plaintiff's agreement to place $21,656 of the settlement proceeds from the underlying actions into escrow in the common pleas court for resolution of Taneff's claim. Additionally, the entry noted, "[t]his case shall remain active and this Court shall retain jurisdiction until the disposition of the attorney fees claimed by Thomas N. Taneff is determined by this Court."

In an effort to determine Taneff's right to the money, plaintiff filed interrogatories and request for production of documents; Taneff failed to comply, and plaintiff responded on May 23, 1996 with a motion to compel discovery. When efforts to mediate a resolution of the fee dispute failed, Taneff on June 12, 1996, moved to refer the matter to the Ohio State Bar Association pursuant to DR 2–107(B). Following full briefing, the trial court granted Taneff's motion.

Although plaintiff filed a motion for reconsideration, the trial court overruled the motion and entered judgment referring the matter to the Ohio State Bar Association for mandatory binding arbitration pursuant to DR 2–107(B). Plaintiff appeals, assigning the following errors:

"I. The common pleas court committed reversible error by referring the issue of a discharged attorney's fees to the Ohio State Bar Association for binding arbitration.

"II. The common pleas court committed reversible error by basing its decision referring the issue of a discharged attorney's fees to the Ohio State Bar Association for binding arbitration upon a statement of counsel contained in an opposing memorandum.

"III. The common pleas court lacked jurisdiction to make any orders in connection with attorney fees.

"IV. The common pleas court abused its discretion and committed reversible error in overruling plaintiff's motion to compel discovery."

Plaintiff's third assignment of error contends that the trial court lacked jurisdiction to resolve Taneff's claim arising from the lien placed on the estate because Taneff was required to initiate a separate lawsuit to recover his fees, and could not litigate the matter in the pending case. Plaintiff's contentions highlight the somewhat unusual posture of this case, not only substantively but procedurally as well.

Ohio recognizes two types of attorney liens: (1) general, or retaining liens, and (2) special, or charging liens. *Fire Protection Resources, Inc. v.*

*Johnson Fire Protection Co.* (1991), 72 Ohio App.3d 205, 209, 594 N.E.2d 146, 148–149, citing *Foor v. Huntington Natl. Bank* (1986), 27 Ohio App.3d 76, 27 OBR 95, 499 N.E.2d 1297. A retaining lien attaches to all property, papers, documents, and monies of the client which come into the attorney's possession during the course of his representation. *Foor, supra,* at 79, 27 OBR at 98–99, 499 N.E.2d at 1301–1302. A retaining lien is a "passive lien," as an attorney cannot actively enforce it; instead the attorney must wait until the client, out of embarrassment or inconvenience, agrees to pay his attorney any fees which are owed in exchange for the return of the property. *Id.* Here, although the fee agreement provided for a retaining lien, Taneff never had one. Instead, Taneff filed a lien against the estate of Dean Walcutt.

An attorney may also have a special or charging lien upon a judgment, decree, or award obtained for a client. See *Mancino v. Lakewood* (1987), 36 Ohio App.3d 219, 223–224, 523 N.E.2d 332, 336–338. Courts differ in deciding whether the lien may attach only to a monetary judgment or to settlement proceeds as well. See *Cohen v. Goldberger* (1923), 109 Ohio St. 22, 141 N.E. 656 (refers to an attorney's right "to payment of fees earned in the prosecution of litigation to judgment"); *In re Hronek* (C.A.6, 1977), 563 F.2d 296 (in Ohio there is no statutory or common-law rule which gives an attorney a lien on his client's cause of action). But, see, *Mancino, supra* (lawyer entitled to bring action to enforce lien on settlement proceeds).

Here, we need not determine whether Taneff could place a charging lien on settlement proceeds, as he did not attempt to do so. Rather, he filed a prejudgment lien on the Walcutt estate. Moreover, we need not determine whether such a prejudgment lien is appropriate, as plaintiff and Taneff agreed the lien would be discharged in exchange for plaintiff's escrowing $21,656 of the settlement proceeds to resolve Taneff's claim for fees. The foregoing, however, undermines Taneff's reliance on *Fire Protection* to support his contention that the trial court had jurisdiction to adjudicate his claim as part of the underlying action.

*Fire Protection* states that " 'until a judgment is fully executed, the court retains jurisdiction of the subject matter and the parties for the purpose of hearing any motion affecting such judgment, and if the attorney desires to have his lien established and declared against such judgment, he may apply to the court for that purpose. * * * An attorney's lien is enforceable through the control the courts have of their judgments and records, and by means of their own process.' " *Id.,* 72 Ohio App.3d at 209, 594 N.E.2d at 149, quoting *Babin v. Royal Indemn. Co.* (1930), 28 Ohio N.P. (N.S.) 148, 151, quoting 6 Corpus Juris 794, and 5 Am.St.Rep. 251, 271. Here, a settlement, not a monetary judgment, was obtained; moreover, Taneff never filed a lien against the proceeds of the

settlement but instead filed it against the estate. Further, Taneff released his lien and thus is not seeking to have a lien established and declared against the settlement.

Nonetheless, the trial court stated in its January 29, 1996 entry that it was retaining jurisdiction over the matter until Taneff's claim for attorney fees was resolved. Plaintiff never objected to the trial court's action during the proceedings, and indeed sought discovery from Taneff, and then discovery sanctions from the court. Only on appeal does plaintiff question the trial court's jurisdiction in this case, making two claims: (1) the trial court's subject matter jurisdiction was never properly invoked, and (2) the trial court never obtained personal jurisdiction over her.

Plaintiff's complaint about the trial court's lack of personal jurisdiction was waived in plaintiff's requesting discovery and in seeking discovery sanctions from the court, as her actions plainly indicate that she submitted to the court's exercise of personal jurisdiction over her. While parties cannot confer subject matter jurisdiction upon a court, *Fox v. Eaton Corp.* (1976), 48 Ohio St.2d 236, 2 O.O.3d 408, 358 N.E.2d 536, they can agree to submit to the court's exercising personal jurisdiction over them. See *State ex rel. Lawrence Dev. Co. v. Weir* (1983), 11 Ohio App.3d 96, 97, 11 OBR 148, 149, 463 N.E.2d 398, 399–400. Indeed, in her memorandum contra Taneff's request to submit the matter to the bar association pursuant to DR 2–107, plaintiff actually argues that since DR 2–107 is inapplicable, the "parties should be permitted to submit this matter under the jurisdiction of [the trial judge] or in a separate cause of action."

Finally, as to subject matter jurisdiction, plaintiff does not contend that the court lacked jurisdiction of the subject matter generally, but that it was never properly invoked. Plaintiff, however, agreed to the trial court's retaining jurisdiction to resolve the fee dispute, and she may not claim now that a separate action is necessary to decide that issue.

Accordingly, plaintiff's third assignment of error is overruled.

Plaintiff's first and second assignments of error are interrelated, and thus we address them jointly. Together they raise the issue of whether the trial court properly referred the underlying dispute concerning Taneff's attorney fees to binding arbitration pursuant to DR 2–107(B), which states:

"In cases of dispute between lawyers arising under this rule, fees shall be divided in accordance with mediation or arbitration provided by a local bar association. Disputes that cannot be resolved by a local bar association shall be referred to the Ohio State Bar Association for mediation or arbitration."

■ DR 2–107(B) does not purport to encompass fee disputes between a client and his or her attorney. Indeed, were it to do so the rule would raise substantial constitutional questions, as it would deprive nonlawyers, not bound by the Code of Professional Responsibility, of the ability to litigate an attorney's claim for fees. Rather, DR 2–107(B) applies to the dispute between or among two or more attorneys disagreeing on dividing an agreed fee. The issue under plaintiff's first and second assignments of error, then, resolves to whether the dispute at issue is between plaintiff and Taneff, or between plaintiff's two attorneys, Taneff and Smith.

According to the evidence before the trial court, Taneff "was originally hired by Deana L. Putnam and others to act as co-counsel with attorney Scott E. Smith, pursuant to a contingency fee Agreement dated January 27, 1993 * * *." A copy of the agreement is attached to Taneff's affidavit and provides that the clients [1] retain and employ the attorneys to act for them, in exchange for which the attorneys will receive thirty-three and one-third percent of whatever sum may be recovered before filing suit, and forty percent if suit is filed. According to the agreement, "[i]n the event services of the attorney are needed or requested following settlement or after one trial, a new and separate agreement will be entered into by client and attorney. If no agreement is entered into, attorneys shall proceed on behalf of the client at $150 per hour." The agreement further stipulates that any money received by either party on account of any settlement or judgment shall be held until distribution is made according to the agreement. The agreement apparently further authorizes the attorneys to place a lien on all documents, property, or money in their possession for the payment of all sums due, and finally concludes that "if a dispute or controversy arises as to payment of fees or costs, the client is responsible for all fees and costs incurred by Attorney, first by arbitration [2] and after that by suit, if necessary." (Footnote added.) Taneff and Smith agreed to divide the contingency fee, fifty-five percent to Smith and forty-five percent to Taneff. By letter dated June 19, 1993, Taneff's services were terminated.

■ Given the foregoing evidence, plaintiff, not Smith, hired Taneff. Taneff and Smith simply agreed how to divide the fee between them. Moreover, the evidence indicates that plaintiff has consistently maintained throughout the action that (1) she disputes the amount of money to which Taneff is entitled, and (2) she

---

1. Plaintiff signed the fee agreement along with Robert Putnam, Mark Alderman, and Mitch Alderman as "clients."

2. The parties do not raise any issue of arbitration pursuant to the agreement; rather, the issues involve arbitration under DR 2–107(B).

has not consented to Taneff's recovering any portion of the $21,656 held in escrow.

As the Ohio Supreme Court pointed out in *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry* (1994), 68 Ohio St.3d 570, 629 N.E.2d 431, a client has an absolute right to discharge an attorney or law firm at any time, with or without cause, subject to the obligation to compensate the attorney for services rendered prior to the discharge. However, when an attorney representing a client pursuant to a contingent-fee agreement is discharged, the attorney's cause of action for a fee recovery on the basis of quantum meruit arises upon the successful occurrence of the contingency. In determining the reasonable value of those services in quantum meruit, the trial court should consider the totality of the circumstances involved in the situation, including the number of hours worked by the attorney before the discharge, the recovery sought, the skill demanded, the results obtained, and the attorney-client agreement itself. *Id.* at syllabus.

Here, Taneff was discharged prior to the recovery sought in the underlying action, and thus is not entitled to the contingent fee under the agreement between plaintiff and himself. However, on settlement of the underlying action, he became entitled to recovery in quantum meruit. The amount to which he is entitled has never been determined; plaintiff has not agreed to that amount, and no tribunal has determined the amount under the parameters set forth in the Supreme Court's opinion in *Lansberry*. Plaintiff is entitled to litigate that matter either in a court of law or pursuant to the terms of her fee agreement with Taneff. She may not be forced to have that determined under DR 2–107(B) in a mandatory binding arbitration procedure before the Ohio State Bar Association.

Moreover, the statement in one of plaintiff's memoranda that noted that Smith also claimed a right to the money held in escrow does not deprive plaintiff of her right to litigate the amount owed to Taneff. While plaintiff may yet owe Smith attorney fees for his work on the case, and in that sense owes him from the settlement proceeds being held in escrow, her obligation to Smith does not create a concomitant obligation to pay Taneff unless Taneff is determined to be entitled to fees under a quantum meruit theory.

Given the foregoing, the trial court erred in referring this matter to binding mandatory arbitration before the Ohio State Bar Association pursuant to DR 2–107(B). To that extent, plaintiff's first two assignments of error are sustained.

In her final assignment of error, plaintiff contends that the trial court erred in failing to grant her motion to compel discovery. The trial court overruled the motion, finding it moot due to the court's having referred the matter to binding arbitration before the bar association. Because we have reversed that ruling, the trial court on remand may consider the propriety of plaintiff's motion to compel discovery. To that extent, plaintiff's fourth assignment of error is sustained.

Having overruled plaintiff's third assignment of error, but having sustained her first, second, and fourth assignments of error to the extent indicated, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PEGGY BRYANT, PETREE and LAZARUS, JJ., concur.