**In re ESTATE OF SOUTHARD; Leeseberg & Valentine et al., Appellants.**

[Cite as *In re Estate of Southard*, 192 Ohio App.3d 590, 2011-Ohio-836.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–409.

Decided Feb. 24, 2011.

Vorys, Sater, Seymour and Pease L.L.P., David W. Hardymon, and Jocelyn N. Prewitt–Stanley, for appellee, William A. Morse.

Leeseberg & Valentine and Gerald S. Leeseberg, for appellants.

BRYANT, Presiding Judge.

{¶ 1} Appellants, the law firm of Leeseberg & Valentine ("L & V") and Diana Southard, executor of the estate of Peter C. Southard, appeal from a judgment of the Franklin County Court of Common Pleas, Probate Division, determining that the probate court lacked jurisdiction to resolve the fee-sharing dispute between L & V and appellee, William Morse. Appellants assign a single error:

> In an action arising out of a wrongful death settlement, the probate court improperly declined to exercise jurisdiction over a dispute between attorneys and the executor of the estate.

Because the probate court did not err in determining that it lacked jurisdiction, we affirm.

## I. Facts and Procedural History

{¶ 2} Peter Southard died on June 11, 2005; the probate court admitted his last will and testament to probate on July 5, 2005. Pursuant to the will, the probate court appointed Diana Southard, Peter's wife, to serve as executor of his estate. Diana retained L & V to pursue a wrongful-death-and-survival action against the assisted-care facility where Peter had stayed.

{¶ 3} On September 2, 2005, Diana entered into a "Medical Malpractice Claim Investigation Contingent Fee Agreement" with L & V. Under its terms, Diana was to pay L & V 40 percent of the gross amount of any recovery from the wrongful-death-and-survival action. The same day, Diana also signed a "Notification of and Consent to Share Fees" in which L & V and Morse agreed "to assume joint responsibility for the representation" of Diana in her claim against the assisted-care facility. The attorneys further agreed that L & V was to receive two-thirds of any fees derived from the litigation, with Morse receiving one-third. The litigation concluded in April 2009 with a verdict against the assisted-care facility; the parties to the litigation subsequently settled the case for the amount of the jury verdict, $6.5 million.

{¶ 4} On December 1, 2009, Adam Rinehart, an attorney for Diana, filed with the probate court an "Application to Approve Settlement and Distribution of Wrongful Death and Survival Claims." See C.P.Sup.R. 70. The application reflected not only the settlement of $6.5 million but also attorney fees of $2.6 million, or 40 percent of the total settlement. The "Distribution Settlement Sheet," attached to the application, indicated that L & V would receive $2.4 million of the $2.6 million, with the remaining $200,000 going to Morse. Although the contingent-fee agreement was attached to the application, the fee-sharing agreement was not. Morse filed an "Objection to Proposed Division of Attorneys Fees on Distribution Settlement Sheet," pointing the court to the fee-sharing agreement.

{¶ 5} On January 6, 2010, the probate court conducted a hearing regarding the application. Concluding that all necessary parties consented, the court approved the settlement and all proposed distributions to the surviving spouse, children, and grandchildren of Peter Southard and subsequently ordered the proceeds from the wrongful-death-and-survival action distributed to them.

{¶ 6} At the January 6 hearing, the court also approved the total amount of $2.6 million in attorney fees. Noting Morse's objection to the proposed division of those fees, the court ordered the $866,666.67 in dispute to be deposited into an interest-bearing account and instructed the parties to submit briefs setting forth the probate court's jurisdiction over the fee dispute. After the parties briefed the issue, the probate court issued an entry, concluding that it lacked jurisdiction over the dispute. The probate court explained that because the matter was a fee-sharing dispute between attorneys, it must be resolved through the Ohio State Bar Association's ("OSBA") mediation or arbitration process pursuant to DR 2–107(B) and Prof.Cond.R. 1.5(f). The probate court stated that after the OSBA resolved the issue, "either L & V or Mr. Morse may apply to the court for disbursement of these funds." Appellants appeal from the probate court's determination that it lacked jurisdiction over the fee dispute between L & V and Morse.

## II. Probate Court's Entry is a Final, Appealable Order

█ {¶ 7} Morse filed a motion to dismiss the appeal, asserting that the probate court's entry is not a final, appealable order because the probate court reserved jurisdiction to take further action in the matter after the OSBA resolved the fee-sharing dispute. Because Morse's motion raises an issue regarding our jurisdiction to entertain the appeal, we first must resolve the motion.

█ {¶ 8} Pursuant to Section 3(B)(2), Article IV, Ohio Constitution and R.C. 2505.03, appellate courts have jurisdiction to review only final orders, judgments, or decrees. " ' "[T]he entire concept of 'final orders' is based upon

the rationale that the court making an order which is not final is thereby retaining jurisdiction for further proceedings. A final order, therefore, is one disposing of the whole case or some separate and distinct branch thereof." ' " *Browder v. Shea,* 10th Dist. No. 04AP–1217, 2005-Ohio-4782, 2005 WL 2210667, ¶ 10, quoting *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 94, 540 N.E.2d 1381, quoting *Lantsberry v. Tilley Lamp Co.* (1971), 27 Ohio St.2d 303, 306, 56 O.O.2d 179, 272 N.E.2d 127. Conversely, " ' "[a] judgment that leaves issues unresolved and contemplates that further action must be taken is not a final appealable order." ' " Id., quoting *State ex rel. Keith v. McMonagle,* 103 Ohio St.3d 430, 2004-Ohio-5580, 816 N.E.2d 597, ¶ 4, quoting *Bell v. Horton* (2001), 142 Ohio App.3d 694, 696, 756 N.E.2d 1241.

{¶ 9} "A trial court's order is final and appealable only if it meets the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B)." *Fahey Banking Co. v. United Tel. Credit Union, Inc.,* 10th Dist. No. 09AP–1130, 2010-Ohio-2193, 2010 WL 1987626, ¶ 18, citing *Denham v. New Carlisle* (1999), 86 Ohio St.3d 594, 595, 716 N.E.2d 184. Civ.R. 54(B) applies to multiclaim or multiparty actions and holds that a "court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." Civ.R. 54(B) does not apply to this appeal, as the probate court's decision addressed the only remaining issue and concluded that the probate court lacked jurisdiction over it.

{¶ 10} R.C. 2505.02(B)(1) is pertinent in resolving whether the probate court's entry is a final, appealable order. It provides that "[a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment." An order that affects a substantial right is "one which, if not immediately appealable, would foreclose appropriate relief in the future." *Bell v. Mt. Sinai Med. Ctr.* (1993), 67 Ohio St.3d 60, 63, 616 N.E.2d 181. Within those parameters, Morse asserts that the appeal is not final and appealable since appellants may appeal the probate court's jurisdictional decision at the conclusion of the OSBA arbitration. Morse contends that if the postarbitration appeal determines that the probate court wrongly decided it lacked jurisdiction, the matter then could be returned to the probate court to pick up where it left the matter.

{¶ 11} To determine whether the trial court's entry affects a substantial right requires that we examine the proceedings that the probate court ordered the parties to pursue with the OSBA. Because the parties executed the fee-sharing agreement in 2005 and the Ohio Rules of Professional Conduct did not take effect until February 1, 2007, the Ohio Code of Professional Responsibility and DR 2–107(A) apply to and govern the fee-sharing agreement. See Prof.Cond.R. "Form

of Citation, Effective Date, and Application" (stating that "the Ohio Code of Professional Responsibility shall continue to apply to govern conduct occurring prior to February 1, 2007").

{¶ 12} DR 2–107 addresses how lawyers from different firms may divide fees. To resolve disputes arising in those circumstances, DR 2–107(B) provides that the fees "shall be divided in accordance with mediation or arbitration provided by a local bar association." If the dispute "cannot be resolved by a local bar association," it "shall be referred to the Ohio State Bar Association for mediation or arbitration." See also Prof.Cond.R. 1.5(f). An "arbitration award rendered pursuant to DR 2–107(B) is final, binding upon the parties, and unappealable." *Shimko v. Lobe,* 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, paragraph one of the syllabus.

{¶ 13} In light of the nature of the proceedings before the OSBA under DR 2–107, the probate court's decision to relinquish jurisdiction in favor of arbitration is a final, appealable order. Initially, the decision involves a substantial right. See *In re Guardianship of Jadwisiak* (1992), 64 Ohio St.3d 176, 183–184, 593 N.E.2d 1379 (recognizing that the order addressing attorney fees "affected a substantial right, *i.e.,* appellant's right to compensation"). Moreover, the probate court's decision determines the action and prevents any other judgment, because the arbitration decision will be final, unappealable and binding on the parties. Cf. R.C. 2711.02(C) (stating that "an order * * * that grants or denies a stay of a trial of any action pending arbitration * * * is a final order and may be reviewed, affirmed, modified, or reversed on appeal"). As a result, even if appellants in a postarbitration appeal could prevail in asserting that the probate court's jurisdictional decision was erroneous, an appellate court would seem to have little basis to compel the nonparty OSBA to modify or revoke its arbitration decision in light of *Shimko.*

{¶ 14} Morse nonetheless asserts that the probate court retained jurisdiction over the funds in dispute by inviting the parties to apply to the probate court for disbursement of withheld funds following the OSBA mediation or arbitration. Although the probate court postarbitration may undertake the ministerial function of disbursing the funds, the probate court under *Shimko* must be consistent with the final and unappealable results of the OSBA mediation or arbitration. At best, the probate court will act as a conduit to distribute the funds in accord with the OSBA's award.

{¶ 15} Accordingly, we deny Morse's motion to dismiss the appeal.

### III. Probate Court Lacks Jurisdiction

{¶ 16} We initially note that appellants' "Statement of Facts" is based almost entirely on Diana's affidavit executed March 6, 2010. The affidavit is not

a part of the record on appeal. See App.R. 9(A) (stating, "The original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases"). An appellate court may not consider materials that were not a part of the trial court's record of proceedings. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, syllabus. We thus must disregard any reference to Diana's affidavit.

{¶ 17} In determining the probate court's jurisdiction, we again must look to DR 2–107(A), which provides that lawyers who are not in the same firm may divide fees only with the prior consent of the client. In addition, as pertinent here, the agreement must state that all the lawyers will assume responsibility for the representation and state, in writing, the terms under which the fee will be divided and the identity of the lawyers. Lastly, the total fee must be reasonable.

{¶ 18} Here, the fee-sharing agreement was in writing, stated that L & V and Morse agreed to assume joint responsibility for the representation, set forth how the fee would be split between L & V and Morse, and bore Diana's signature. In view of the probate court's January 14, 2010 entry approving the total amount of attorney fees, that amount may be considered reasonable, an element the parties do not dispute. The agreement thus satisfies the terms of DR 2–107(A). Accordingly, DR 2–107(B) requires the attorneys to submit their dispute to the OSBA for mediation or arbitration. *Shimko,* 103 Ohio St.3d 59, 2004-Ohio-4202, 2004 WL 1801316, at ¶ 26 (noting that compliance with DR 2–107 is mandatory); see also Comment 10 to Prof.Cond.R. 1.5(f) (stating, "The lawyer must comply with the procedure" for mediation or arbitration under Rule 1.5(f)).

{¶ 19} In response, appellants initially assert that the probate court viewed its own jurisdiction too narrowly. Appellants contend that because the wrongful-death statute and the Rules of Superintendence vest the probate court with jurisdiction to approve settlement offers and determine the reasonableness of attorney fees in wrongful-death actions, the probate court is the proper forum to hear the fee-sharing dispute between L & V and Morse.

{¶ 20} The probate court's role in approving settlements in wrongful-death-and-survival actions is established in statute and the corresponding Rules of Superintendence. R.C. 2125.02(C) states that a personal representative may settle a wrongful-death action with the approval of the probate court. Sup.R. 70 provides for an application to approve the settlement and distribution of wrongful-death-and-survival claims in the probate court. It further states not only that the probate court retains jurisdiction over the settlement, allocation, and distribution of the claims, but that attorney fees arising from a wrongful-death-and-survival action shall be subject to the approval of the probate court.

{¶ 21} The probate court's January 14, 2010 entry approving the settlement and distribution of the wrongful-death-and-survival claims complied with those statutes and rules by approving the settlement generally and the portion of the settlement allocable to attorney fees specifically. The noted provisions, however, do not address the fee-sharing issue under the Code of Professional Responsibility and the Rules of Professional Conduct. C.P.Sup.R. 71(A), however, states that in cases before the probate court, "[a]ttorney fees in all matters shall be governed by Rule 1.5 of the Ohio Rules of Professional Conduct," the successor to DR 2–107. Accordingly, none of the statutes or rules appellants cite advances the contention that the probate court had jurisdiction over L & V's fee-sharing dispute with Morse.

{¶ 22} Appellants also point to various decisions to support their jurisdictional argument, citing *Messner v. Kaforey* (Dec. 15, 1993), 9th Dist. No. 16270, 1993 WL 526683, *In re Guardianship of Patrick* (1991), 66 Ohio App.3d 415, 584 N.E.2d 86, and *In re Settlements of Betts* (1991), 62 Ohio Misc.2d 30, 587 N.E.2d 997, to suggest that the probate court may reject a contingent-fee contract for which the probate court did not grant prior approval. By analogy, appellants contend that because the fee-sharing agreement was not pre-approved, the probate court retained jurisdiction to reject it. The cited cases, however, involve the reasonableness of the total amount of fees arising from a wrongful-death action. None of the cases indicates that a fee-sharing dispute, arising out of a case before the probate court for settlement approval, should be resolved in the probate court. Even if the probate court here could have modified the total attorney-fee award arising from the wrongful-death settlement pursuant to the authority appellants cite, it approved the award and the settlement. Similarly, three additional cases that appellants cite, *In re Estate of Haller* (1996), 116 Ohio App.3d 866, 689 N.E.2d 612, *Sean Gregor & Assoc. Co., L.P.A. v. Ian N. Friedman Assoc., L.L.C.*, 8th Dist. No. 91181, 2008-Ohio-5120, 2008 WL 4436254, and *Ramsey v. Neiman* (1994), 69 Ohio St.3d 508, 634 N.E.2d 211, do not further appellants' argument, as the cases neither concerned a fee-sharing dispute between attorneys working on a wrongful-death case nor involved DR 2–107.

{¶ 23} Appellants also rely on *Jadwisiak*, 64 Ohio St.3d 176, 593 N.E.2d 1379, and *In re Kinross* (1992), 84 Ohio App.3d 335, 616 N.E.2d 1128, to support their jurisdictional contentions, but neither case does so. In both *Jadwisiak* and *Kinross*, the probate court heard a fee dispute between attorneys, but in neither case were the ethical rules cited or applied because of facts distinguishing them from those at issue here. *Jadwisiak* concerned a fee dispute between an Ohio attorney and a Florida attorney in a case involving an Ohio minor injured in Florida. The Ohio Supreme Court concluded that the probate court had "subject matter jurisdiction over the entire amount of [the] settlement funds, which

598

includes [the] attorney fees to be drawn therefrom," both of which the probate court here approved. Id. at paragraph one of the syllabus.

{¶ 24} *Kinross* concerned a fee dispute between Ohio attorneys arising from the settlement of a wrongful-death case where one attorney received the total fee award, but the other attorney did not receive notice of the hearing regarding the approval and distribution of the attorney fees. Id. at 337. Citing *Jadwisiak,* the court held that the probate court had jurisdiction over the entire settlement proceeds to order the attorney to return the funds to the estate. Id. at 339–340. *Kinross,* however, did not discuss DR 2–107, much less hold that it does not require arbitration of fee-sharing disputes among attorneys.

{¶ 25} In the final analysis, the Disciplinary Rules and the Ohio Rules of Professional Conduct specify that fee-sharing disputes between attorneys arising under the rules must be submitted to arbitration or mediation before the appropriate bar association. The probate court properly concluded that it lacked jurisdiction over the fee dispute and referred the dispute to the OSBA for mediation or arbitration. See *Steiner v. Van Dorn Co.* (1995), 104 Ohio App.3d 51, 54, 56, 660 N.E.2d 1256 (determining that the trial court had correctly held that it lacked subject-matter jurisdiction to hear a fee dispute between attorneys because the dispute was solely between the attorneys concerning their portion of the approved settlement fee, and therefore DR 2–107(B) applied and required the attorneys to submit to arbitration).

{¶ 26} Appellants alternatively assert that Diana, by consenting to the fee-sharing agreement, became a necessary party to any fee dispute arising out of the case. The probate court addressed the argument in its entry, observing that L & V's argument would mean that no fee-sharing dispute could ever be referred to arbitration or mediation because the Disciplinary Rules, as well as the Rules of Professional Conduct, require the client to consent in writing to the fee-sharing agreement. Case law draws a distinction supporting the probate court's conclusion.

{¶ 27} When a dispute over fees occurs between a client and an attorney, the client cannot be compelled to submit the dispute to arbitration pursuant to DR 2–107(B), now Prof.Cond.R. 1.5(f), because doing so would deprive the client of his or her right to litigate the dispute to a jury. *Putnam v. Hogan* (1997), 122 Ohio App.3d 351, 356, 701 N.E.2d 774. The principle, however, does not apply here, as *Endicott v. Johrendt* (Apr. 30, 1998), 10th Dist. No. 97APE08–1122, 1998 WL 212770, appeal not allowed, 83 Ohio St.3d 1430, 699 N.E.2d 946, illustrates.

{¶ 28} In *Endicott,* the client disputed the amount of fees owed to two of her three attorneys; the attorneys also disputed the allocation among themselves. The client filed an action against the two attorneys, disputing their entitlement to

any fee. Separately, the attorneys arbitrated before the OSBA a dispute among themselves where they received a decision requiring one attorney to remit a portion of his fee to the other two. Citing *Putnam*, the paying attorney argued that the OSBA panel lacked jurisdiction to hear the dispute.

{¶ 29} Concluding that *Putnam* did not apply, we noted that *Putnam* addressed a client's rights and determined that a client could not be forced to litigate a fee dispute with her former attorney in a DR 2–107(B) arbitration proceeding. Unlike *Putnam*, Endicott was not forced to arbitrate her claim against her attorneys, and her action against them was not implicated in the appeal. Rather, like L & V and Morse, the attorneys in *Endicott* were embroiled in a fee-sharing dispute that concerned only their respective shares of the settlement allocated to attorney fees, a matter appropriately resolved through arbitration.

{¶ 30} Similarly, the OSBA mediation or arbitration process here will affect only the allocation of fees among the attorneys. Even though Diana signed the fee-sharing agreement, that fact is not enough to convert the DR 2–107 dispute among the attorneys into a *Putnam* dispute between Diana and her attorney. Indeed, as the probate court noted, to so hold would render DR 2–107 and Prof.Cond.R. 1.5(f) endlessly inapplicable, a result contrary to the Supreme Court's decision in *Shimko*. See *Shimko*, 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, at ¶ 26, 59 (observing that DR 2–107(B) is mandatory and was designed to "preserve public confidence in our system of justice * * * [and] to allow for remuneration of legal services without compromising the integrity of the legal profession").

{¶ 31} Lastly, appellants suggest that the probate court retains jurisdiction to determine whether the fee-sharing agreement was fraudulently induced. L & V points out that it filed a complaint in the general division of the Franklin County Court of Common Pleas raising the issue; L & V contends that the probate division of the same court has similar jurisdiction. See *Schulman v. Wolske & Blue Co., L.P.A.* (1998), 125 Ohio App.3d 365, 370, 708 N.E.2d 753 (citing *Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A. v. Robert E. Sweeney Co.* (1997), 123 Ohio App.3d 289, 704 N.E.2d 47, and suggesting that "DR 2–107[B] does not divest the trial court of jurisdiction over a breach-of-contract action"). Because L & V did not raise the issue in the probate court, we decline to determine the issue on appeal. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 220, 574 N.E.2d 457, overruled on other grounds in *Collins v. Sotka* (1998), 81 Ohio St.3d 506, 692 N.E.2d 581, paragraph one of the syllabus (stating that "issues not presented for consideration below will not be considered by this court on appeal").

{¶ 32} Because L & V and Morse dispute the allocation of their fees pursuant to a fee-sharing agreement, and the fee-sharing agreement meets the requirements of DR 2–107(A), the parties must submit their dispute to binding arbitration or mediation before the OSBA. The probate court properly concluded that it lacked jurisdiction over the dispute.

Motion to dismiss denied
and judgment affirmed.

FRENCH and CONNOR, JJ., concur.