**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Chester Twp. v. Grendell,* **Slip Opinion No. 2016-Ohio-1520.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-1520

THE STATE EX REL. CHESTER TOWNSHIP ET AL. *v.* GRENDELL, JUDGE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Chester Twp. v. Grendell,* **Slip Opinion No. 2016-Ohio-1520.]**

*Prohibition—Probate court judge does not patently and unambiguously lack jurisdiction to issue orders attempting to correct activities by park-district commissioners and township trustees that frustrate the purpose of the original probate court order creating the park district—Writ denied.*

(No. 2015-0604—Submitted January 5, 2016—Decided April 14, 2016.)

IN PROHIBITION.

————————————

**Per Curiam.**

{¶ 1} Relators, Chester Township and its trustees, Michael J. Petruziello, Bud Kinney, and Ken Radtke Jr., seek to prohibit respondent, Judge Timothy J. Grendell, from issuing or enforcing rulings against them in Geauga County Probate Court case No. 84PC000139, the case that created the Chester Township Park

District. Judge Grendell issued entries that the township trustees allege impose duties, obligations, and fees on them that he has no jurisdiction to impose. Because the township and its trustees have an alternative remedy by way of appeal and because Judge Grendell did not patently and unambiguously lack jurisdiction to act as he did, we deny the writ. We also deny the township and the township trustees' motion for oral argument.

*Facts*

**Creation of the Chester Township Park District**

{¶ 2} The Chester Township Park District was created in 1984 in accordance with R.C. Chapter 1545. The application requesting the creation of the park district was submitted by the predecessors of the current township trustees and was approved by entry of the Geauga County Probate Court on May 10, 1984.

{¶ 3} The judgment entry indicates that the court held a hearing, that the application had been authorized in accordance with R.C. 1545.02, and that the court found that the creation of the park district was conducive to the general welfare. The court set the territorial limits of the park district. It also held that it would appoint three commissioners in accordance with R.C. 1545.05, that these commissioners would constitute the Board of Park Commissioners for the Chester Township Park District, and that the park district is "a body politic and corporate with full authority and subject to such limitations as provided by law." Since the park district's formation, the probate court has appointed, reappointed, and accepted the resignations of park-district commissioners.

**The probate court appoints a master commissioner**

{¶ 4} In March 2014, an anonymous report entitled "Chester Township Park District 2013 Review" ("2013 Review") was submitted to the township trustees and the probate court. The 2013 Review questioned (1) whether the park district was operating in accordance with the law and (2) whether the park-district funds had been mismanaged. Judge Grendell appointed attorney Mary Jane Trapp

2

as a master commissioner under R.C. 2101.06 to investigate the issues raised in the 2013 Review and make recommendations. Notice of the appointment was sent to the park-district commissioners and the township trustees. The notice also indicated that once the master commissioner's final report was submitted, Judge Grendell would schedule a hearing to address the matter and related costs.

{¶ 5} In the course of her investigation, Master Commissioner Trapp interviewed and consulted with the three township trustees as well as the township fiscal officer. All of these officers cooperated with the investigation of the issues raised in the 2013 Review, and none objected to her appointment as master commissioner.

**The master commissioner's report**

{¶ 6} When her investigation was complete, Trapp prepared a report and recommendations. Trapp found no evidence of intentional disregard of the law on the part of the park-district commissioners or the park district's administrative assistant. Trapp did find, however, that "the township leadership and some citizen activists have a very incomplete understanding of the *independent* nature of the park district and what laws are and are not applicable." (Emphasis sic.) Trapp concluded that the park district was created as a separate political body, with independent authority to levy taxes and control the park lands.

{¶ 7} Trapp also found that when it was created, the park district was funded by a portion of the local government and library funds passed through from the state by the Geauga County Budget Commission, by donations, and by an inside millage of .08 mills, which in 1992, was increased to .1 mill by the township.

{¶ 8} However, in 2002, the township trustees voted to eliminate the inside millage, citing sufficient reserves for the park district's 2003 budget and the township trustees' intent to shift money to other projects. From that time forward, funding for the park district has been "on a project basis," and maintenance was

provided by the township's road-maintenance department. Those maintenance services were eliminated in 2013.

{¶ 9} In 1985, shortly after the park district was created, the township trustees and the park-district commissioners entered into a written agreement under which the park-district commissioners assumed control of all parks and parklands owned by the township. The 1985 agreement was superseded by a new agreement in 1993. The 1993 agreement provides for an initial five-year term and automatically renews thereafter on an annual basis unless terminated by either party in writing. The agreement also states that on the expiration or termination of the agreement "control of all parks and parklands shall revert to the Township."

**The public hearing and comments on the master commissioner's report**

{¶ 10} After Trapp submitted her report and recommendations to the court, Judge Grendell scheduled a public hearing for August 25, 2014. The township trustees attended the hearing and submitted comments by letter to Judge Grendell in October 2014. In their letter, the township trustees did not object to Trapp's assignment as a master commissioner but rather, stated that they were pleased that Trapp had included in her report recommendations from the township trustees and fiscal officer. They thanked the court and Trapp for their efforts. They asked several times in their letter when they could meet with the park-district commissioners to work out issues raised in Trapp's report.

**The probate court's judgment entry of November 26, 2014**

{¶ 11} After consideration of Trapp's report and recommendations and the township trustees' comments, Judge Grendell issued a judgment entry on November 26, 2014, that set forth findings of fact and conclusions of law. The court found that in 2002, the township trustees had terminated the dedicated inside millage funding for the park district, which was contrary to the original judgment entry creating the park district as an independent governmental entity. The court concluded that the elimination of the dedicated millage "directly contravened the

4

fundamental purpose" for creating the park district—to keep it "free from the vicissitudes of Township government and politics."

{¶ 12} The court further concluded that the park-district commissioners, not the township trustees, have the statutory authority to levy up to one-half mill for park-funding purposes and that the park-district commissioners needed to take appropriate action to ensure that the park district had a dedicated source of independent funding by January 2016. The court found that because the township trustees had wrongfully terminated the park district's millage funding in 2002, the township trustees had a duty to ensure that funds were made available to the park district to perform its statutory duties until the park district is able to establish a dedicated independent funding source. The court did not order the township trustees to pay any specified amount.

{¶ 13} The court also concluded that the 1993 agreement between the township and the park district may be in conflict with the court's entry creating the park district and the statutory authority of the park district. The court directed Trapp to meet with the township trustees and park-district commissioners to formulate a new agreement that would not conflict with R.C. Chapter 1545 and the terms of the entry creating the park district. Finally, the court charged 75 percent of the fees and costs of the master commissioner to the township and the park district and 25 percent to the court.

**The township and township trustees' appeal and motions for stay**

{¶ 14} The township and its trustees filed an appeal and a motion for stay in the Eleventh District Court of Appeals. They also filed a motion in the probate court asking it to stay enforcement of its judgment entry pending appeal. In their motions, the township trustees challenged the probate court's subject-matter jurisdiction to grant the relief prescribed in the November 26, 2014 entry. The probate court denied the motion for stay and entered a supplemental judgment entry to its November entry on December 15, 2014, in which it set forth the reasons why

it has continuing subject-matter jurisdiction over the case creating the park district, including its authority to review the conduct of the park-district commissioners and remove them if necessary, to investigate the allegations raised in the 2013 Review, and to enforce the terms of the original judgment entry creating the park district by requiring that the agreement between the township trustees and the park-district commissioners be amended so that it does not limit the independent nature of the park district.

**{¶ 15}** The court of appeals temporarily stayed the probate court's November 26 order, but on further review, issued an opinion on March 31, 2015, dismissing the appeal for lack of a final, appealable order. *In re Chester Twp. Park Dist.*, 11th App. Geauga No. 2014-G-3242, 2015-Ohio-1210. The court of appeals' rationale was that because the probate court had not yet approved and ordered payment of the master commissioner's fees and costs, the order did not fully and finally resolve the issue challenged. *Id*. at ¶ 7. Moreover, the court held, the pecuniary interest at issue was speculative, and therefore, the township trustees lacked standing to appeal. *Id.* at ¶ 8.

**{¶ 16}** Rather than filing an appeal from this entry, the township and its trustees filed this action in prohibition.

### *Analysis*

### Request for oral argument

**{¶ 17}** The township and its trustees moved for oral argument in this case. In cases in which oral argument is not mandatory—such as cases originating in this court, *see* S.Ct.Prac.R. 17.02—the court has discretion to grant oral argument, and " 'in exercising this discretion, we consider whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among courts of appeals.' " *State ex rel. Jean-Baptiste v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, ¶ 10, quoting *State ex rel.*

*Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 15.

{¶ 18} This case indirectly involves a probate court's continuing jurisdiction over park districts, about which there is little law. However, as explained below, because the township and its trustees have an adequate remedy in the ordinary course of the law by way of appeal, the only issue is whether the probate court "patently and unambiguously" lacked jurisdiction to issue the orders challenged here. This is a straightforward application of the prohibition standard, and so oral argument is not necessary.

**Prohibition**

{¶ 19} To be entitled to the requested writ of prohibition, the township trustees must establish that (1) the probate court is about to exercise or has exercised judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of the law. *State ex rel. Bell v. Pfeiffer*, 131 Ohio St.3d 114, 2012-Ohio-54, 961 N.E.2d 181, ¶ 18; *State ex rel. Miller v. Warren Cty. Bd. of Elections*, 130 Ohio St.3d 24, 2011-Ohio-4623, 955 N.E.2d 379, ¶ 12. Even if the township trustees do have an adequate remedy in the ordinary course of the law, a writ may issue if the lack of jurisdiction was patent and unambiguous. *Chesapeake Exploration, L.L.C. v. Oil & Gas Comm.*, 135 Ohio St.3d 204, 2013-Ohio-224, 985 N.E.2d 480, ¶ 11.

{¶ 20} The court exercised judicial power in ordering the township trustees to take certain actions under the aegis of the court's statutory authority and its inherent authority to enforce its entry creating the park district.

{¶ 21} In addition, the township trustees clearly have an adequate remedy in the ordinary course of the law by way of appeal. Although their first effort in that regard ended in a dismissal, the Eleventh District dismissed the case only because it was unripe. Therefore, we will issue a writ of prohibition only if the

township trustees can show that the probate court patently and unambiguously lacked jurisdiction.

**Jurisdiction of probate courts over park districts**

{¶ 22} Probate courts are courts of limited jurisdiction. *In re Guardianship of Hollins,* 114 Ohio St.3d 434, 2007-Ohio-4555, 872 N.E.2d 1214, ¶ 11 ("probate courts are courts of limited jurisdiction and are permitted to exercise only the authority granted to them by statute and by the Ohio Constitution"), citing *Corron v. Corron,* 40 Ohio St.3d 75, 77, 531 N.E.2d 708 (1988). Moreover, when jurisdiction is based on a statutory grant, "this court is without the authority to create jurisdiction when the statutory language does not." *Waltco Truck Equip. Co. v. Tallmadge Bd. of Zoning Appeals*, 40 Ohio St.3d 41, 43, 531 N.E.2d 685 (1988).

{¶ 23} The general grant of jurisdiction to probate courts is set forth in R.C. 2101.24. But the probate court's authority concerning park districts is derived from R.C. Chapter 1545. R.C. Chapter 1545 gives authority to a probate court to create park districts, R.C. 1545.04; dissolve park districts, R.C. 1545.37; and appoint and remove park-district commissioners, R.C. 1545.05 and 1545.06. No other explicit role is given to the probate court with regard to park districts. In addition, the only explicit role in R.C. Chapter 1545 for township trustees is in applying to the probate court for the creation of a park district. R.C. 1545.02.

{¶ 24} On the other hand, "[t]he probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code." R.C. 2101.24(C). In addition, "[t]he laws relating to the jurisdiction of the probate court are remedial and must be liberally construed." *In re Rauscher*, 40 Ohio App.3d 106, 108, 531 N.E.2d 745 (8th Dist.1987). A probate court's jurisdiction is broad, so as to enable it to order relief that may be required to fully adjudicate a matter. *See, e.g., State ex rel. Lewis v. Moser*, 72 Ohio St.3d 25, 29, 647 N.E.2d 155 (1995) (probate courts do not patently and unambiguously lack jurisdiction to

award compensatory and punitive damages for breach of fiduciary duty, even though such a remedy is not expressly authorized by R.C. 2101.24).

{¶ 25} Probate courts exercise jurisdiction over nonadversarial proceedings, such as the appointment, supervision, and removal of fiduciaries or guardians. R.C. 2101.24(A)(1)(e). A probate court has plenary authority to initiate its own investigations of the appointed guardian or official when necessary. *See, e.g., In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471, 933 N.E.2d 1067, ¶ 54 (holding that probate courts have the plenary authority to investigate guardians); *In re Estate of Howard*, 9th Dist. Lorain No. 05CA008730, 2006-Ohio-2176, ¶ 17 ("it was within the probate court's inherent powers and duties to consider the fiduciary's circumstances regardless of the manner in which they came to the court").

{¶ 26} Probate courts also have the authority to appoint a special master commissioner to carry out this investigative function. R.C. 2101.06. And courts, including probate courts, have wide discretion to impose the costs of hiring a master commissioner on parties. *State ex rel. Estate of Hards v. Klammer*, 110 Ohio St.3d 104, 2006-Ohio-3670, 850 N.E.2d 1197, ¶ 14 (denying a writ of prohibition because "any error by [the court regarding the imposition of costs] is, at best, an error in the exercise of jurisdiction rather than a want of jurisdiction").

{¶ 27} Moreover, although R.C. Chapter 1545 does not explicitly give probate courts supervisory power over park districts, no other agency or entity has been given that power. Because probate courts have continuing jurisdiction to appoint and remove park-district commissioners, probate courts have the inherent authority to investigate the operations of park districts to determine whether the park-district commissioners are properly exercising their authority with regard to the park districts. This power is analogous to the power of probate courts to appoint and remove guardians, which necessarily includes the power to investigate guardians and act on what the court finds. *Spangler* at ¶ 45, 54.

**{¶ 28}** Under R.C. 2101.24(C), probate courts have plenary power to "dispose fully of any matter that is properly before the court," unless the power is expressly limited or denied by the Revised Code. Without the power to investigate the management of park districts and issue orders compelling compliance with R.C. Chapter 1545, a probate court's power to appoint and remove park-district commissioners would be hollow.

**{¶ 29}** The township trustees argue that the probate court "patently lacks jurisdiction or authority" over them in the Geauga County Probate Court case that created the park district and request that the entries be vacated insofar as they impose duties, obligations, and fees on them.

**{¶ 30}** In this case, the master commissioner determined that certain activities by the township trustees frustrated the purposes for which the park district was created. The probate court's authority to create park districts and its plenary power "to dispose fully of any matter" that is properly before it surely includes the ability to issue orders to enforce the entry creating the park district, including orders that impose duties on those interfering with the park district's purposes.

**{¶ 31}** In any case, we need only decide whether the probate court patently and unambiguously lacks jurisdiction over the matter. We are not convinced that the probate court so patently and unambiguously lacked jurisdiction to issue the orders in the underlying case that we are willing to issue a writ and circumvent the appellate process.

*Conclusion*

**{¶ 32}** We deny the writ because the township trustees have not shown that the probate court patently and unambiguously lacked jurisdiction to issue orders attempting to correct activities by the park-district commissioners and the township trustees that frustrate the purpose of the original probate court order creating the park district.

Writ denied.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

————————————

Mazanec, Raskin & Ryder Co., L.P.A., Frank H. Scialdone, and Todd M. Raskin, for relators.

Roetzel & Andress, L.P.A., and Stephen W. Funk, for respondent.

James Gillette, urging denial of the writ for amicus curiae Chester Township Park District.

Dinsmore & Shohl, L.L.P., William J. Seitz III, and Bryan E. Pacheco, urging denial of the writ for amici curiae Ohio Probate Court Judges Richard Carey, James Cissell, Denny Clunk, Jan Long, Phil Mayer, Bev McGookey, Rob Montgomery, Jack Puffenberger, Randy Rogers, Ken Spicer, Tom Swift, James Walther, and Mary Pat Zitter.

————————————