[Cite as *Slater v. Grubb & Assocs., LPA*, 2018-Ohio-1475.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

James W. Slater, Admr., :

        Plaintiff-Appellee/ :
        [Cross-Appellant],

         :

[Grubb & Associates, LPA,                   No. 17AP-453

         :               (Ct. of Cl. No. 2014-963)

        Intervenor-Appellant/
        Cross-Appellee], :          (REGULAR CALENDAR)

v. :

Ohio Department of Rehabilitation :
and Correction,

         :

        Defendant-Appellee/
        [Cross-Appellee]. :

---

D E C I S I O N

Rendered on April 17, 2018

---

**On brief:** *Edward L. Gilbert Co., LPA*, and *Edward L. Gilbert*, for plaintiff-appellee. **Argued:** *Edward L. Gilbert*.

**On brief:** *Grubb & Associates, LPA*, *Natalie F. Grubb* and *Mark E. Owens*, for intervenor-appellant. **Argued:** *Mark E. Owens*.

---

APPEAL from the Court of Claims of Ohio

KLATT, J.

{¶ 1} Intervenor-appellant, Grubb & Associates, LPA ("Grubb"), appeals a judgment of the Court of Claims of Ohio that awarded Grubb $3,000 in attorney fees. Plaintiff-appellee, James W. Slater, administrator for the estate of Michael Ferrara, Jr. ("the

Estate"), cross appeals from the same judgment. For the following reasons, we reverse the trial court's judgment.

{¶ 2} While Michael Ferrara, Jr. was imprisoned at the Ross Correctional Institution, another inmate, Logan Murphy, attacked and killed him. Michael Ferrara, Jr.'s parents, Michael Ferrara, Sr. and Louise Ferrara, hired Grubb to open an estate for Michael Ferrara, Jr. and to pursue a wrongful death action against the Ohio Department of Rehabilitation and Correction ("ODRC"). On January 19, 2013, the Ferraras entered into a contingency retainer agreement with Grubb. According to that agreement, Grubb would collect a contingency fee of 35 to 40 percent of any amount the Ferraras recovered from ODRC. If the Ferraras recovered nothing, then they would "not be indebted to [Grubb] for either costs or legal fees." (Intervenor's Ex. A at 2.) The agreement also provided, "Client grants attorney a lien on all claims in which attorney represents client under this agreement. The lien shall cover any sums due and owing to attorney at the termination of attorney's services and will attach to any money or property recovered by client." *Id.*

{¶ 3} After Grubb secured the Ferraras as clients, a paralegal drafted and submitted a public records request to ODRC seeking records related to Michael Ferrara, Jr. and Murphy, as well as prison policies and personnel. Grubb employees reviewed the records received from ODRC and forwarded a copy of those records to the Ferraras. Additionally, a Grubb associate attorney talked with a prosecutor regarding the criminal case against Murphy. That associate also emailed with a local reporter about articles the reporter wrote about the death of Michael Ferrara, Jr. Grubb employees passed along information and documents uncovered through these communications to the Ferraras. Finally, Grubb engaged a litigation consultant to "evaluate case strengthes [sic]/weaknesses; advise of who to depose, etc." (Intervenor's Ex. H at 7.)

{¶ 4} In September 2014, the Ferraras terminated their attorney-client relationship with Grubb and hired Edward L. Gilbert Co., LPA ("Gilbert") instead. Soon thereafter, Gilbert opened an estate for Michael Ferrara, Jr. and, as attorney for the Estate, filed a wrongful death action against ODRC in the Court of Claims.[1] Six months after commencement of the action, Grubb moved to intervene in order to pursue a charging lien.

---

[1] The Cuyahoga County Probate Court appointed James W. Slater as administrator for the estate of Michael Ferrara, Jr. on November 14, 2014. The Estate filed the wrongful death action on December 11, 2014.

Representing itself as former counsel for the Estate, Grubb asserted "an attorney's charging lien for fees earned and costs in [its] representation of Plaintiff in this case." (Notice of Attorney's Charging Lien and Mot. to Intervene for Limited Purpose of Pursuing the Attorney's Charging Lien at 1.) By virtue of the charging lien, Grubb sought payment of $6,713.43 in fees and costs, plus 1.5 percent interest, from any judgment or settlement proceeds due to the Estate. The Court of Claims denied Grubb's motion, holding that Grubb had no interest in the action unless and until a judgment or settlement created a fund from which Grubb could collect its fees and costs.

{¶ 5} After extensive discovery, a trial on the wrongful death action began in September 2016. During trial, the parties reached a settlement. Grubb then filed a renewed motion to intervene in order to assert a charging lien. In the motion, Grubb again represented itself as former counsel for the Estate and asserted a charging lien for fees and costs accrued during its representation of the Estate in the wrongful death action.

{¶ 6} In response to Grubb's motion, the Estate pointed out that Grubb had represented the Ferraras, not the Estate. Thus, Grubb had not done any legal work for the Estate and, consequently, could not seek payment from settlement proceeds to be paid to the Estate. The Estate also contended that no enforceable charging lien existed because Grubb had not helped to create the settlement reached between the Estate and ODRC. Grubb did not participate in opening an estate for Michael Ferrara, Jr., nor in initiating or prosecuting the litigation against ODRC. Moreover, in accomplishing those tasks, Gilbert neither relied upon the material and information Grubb had generated during its representation of the Ferraras nor used the litigation consultant Grubb had hired.

{¶ 7} While Grubb's motion to intervene was pending, the Estate and ODRC submitted an executed settlement agreement to the Court of Claims. The parties also submitted a copy of the Cuyahoga County Probate Court's entry approving the settlement and setting the distribution of the settlement funds. In that entry, the probate court ordered payment of $60,000 in attorney fees for the legal services that Slater & Zurz, LLP ("Slater") and Gilbert rendered with respect to the wrongful death action. The probate court also addressed the question of Grubb's charging lien. The "Settlement Distribution Compilation" attached to the entry stated:

> Attorney Natalie Grubb of Grubb & Associates has filed an attorney's charging lien for "$6,713.43, plus 1.5% interest per

month, per retainer, from September, 2014, totaling $9,520.08" in the Estate's wrongful death litigation in the Ohio Court of Claims. From its attorney fees awarded herein, Slater & Zurz, LLP and Edward L. Gilbert Co., LPA will indemnify and hold the Estate harmless from and pay any fees, costs and expenses finally determined to be owed by the Estate for said charging lien.

The entry reiterated that "Slater & Zurz, LLP and Edward L. Gilbert Co., LPA will indemnify and hold the Estate harmless from and pay any fees, costs and expenses finally determined to be owed by the Estate to Grubb & Associates, LPA." (Entry Approving Settlement and Distribution of Wrongful Death and Survival Claims at 2.)

{¶ 8} The Court of Claims noted the filing of the settlement agreement and scheduled a hearing on the issue of the charging lien in an entry dated December 16, 2016. Approximately one month later, the Court of Claims issued an entry approving and confirming the settlement agreement and dismissing the wrongful death action. The entry also ordered that the settlement warrant of $150,000, made payable to the Estate, be sent to Gilbert.

{¶ 9} At the February 22, 2017 hearing regarding the charging lien, Natalie Grubb testified and introduced documentary evidence. After considering the evidence, the trial court determined that the benefit that Grubb's work conferred upon the settlement outcome did not support its demand for $6,713.43, plus interest. The trial court found, instead, that Grubb was entitled to recover on the basis of quantum meruit the amount of $3,000.

{¶ 10} Grubb now appeals the trial court's judgment, and it assigns the following errors:

[1.] The Trial Court Erred and Abused Its Discretion in Awarding to Intervenor-Appellant Less Than The Fees Owed, As Secured By Its Attorney Charging Lien.

[2.] The Trial Court Erred in Using a *Quantum Meruit* Analysis to Determine Reasonable Attorney's Fees Owed to Intervenor-Appellant When There Is An Enforceable Attorney Charging Lien Supported By An Express Contract.

{¶ 11} The Estate cross appeals, and it assigns the following errors:

[1.] The Trial Court Did Not Have Subject-Matter Jurisdiction.

[2.] The Trial Court erred when it Granted Grubb's Motion to Intervene.

[3.] The Trial Court erred when it found that Grubb is entitled to recover on the basis of quantum meruit in the amount of $3,000.00 from the settlement proceeds.

{¶ 12} We will begin our review with the Estate's cross appeal. By its first assignment of error, the Estate argues that the trial court lacked subject-matter jurisdiction to determine whether Grubb had an enforceable charging lien and, if so, the amount due to Grubb. We disagree.

{¶ 13} " 'Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits' and 'defines the competency of a court to render a valid judgment in a particular action.' " *Cheap Escape Co. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, ¶ 6, quoting *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972). Because a court without subject-matter jurisdiction lacks the power to adjudicate the merits of a case, parties may challenge jurisdiction at any time during the proceedings. *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 11. Whether a trial court possessed subject-matter jurisdiction is a question of law, which an appellate court considers de novo. *John Roberts Mgt. Co. v. Obetz*, 188 Ohio App.3d 362, 2010-Ohio-3382, ¶ 8 (10th Dist.).

{¶ 14} Probate courts are courts of limited jurisdiction and, consequently, they may only exercise that authority granted to them by statute and the Ohio Constitution. *In re Guardianship of Hollins*, 114 Ohio St.3d 434, 2007-Ohio-4555, ¶ 11. R.C. 2101.24 delineates the jurisdiction of probate courts. As relevant to this case, that statute states:

[T]he probate court shall have exclusive jurisdiction over a particular subject matter if both of the following apply:

(a) Another section of the Revised Code expressly confers jurisdiction over that subject matter upon the probate court.

(b) No section of the Revised Code expressly confers jurisdiction over that subject matter upon any other court or agency.

R.C. 2101.24(A)(2)(a) and (b).  This provision applies to the distribution of proceeds resulting from the settlement of a wrongful death action given the dictates of R.C. 2125.02 and 2125.03.

{¶ 15} Pursuant to R.C. 2125.02(A)(1), "a civil action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit" of the decedent's next of kin.  The personal representative may settle the wrongful death action only "with the consent of the court making the appointment" of the personal representative.  R.C. 2125.02(C).  Subsequent to settlement, that same court determines how to distribute the settlement funds.  R.C. 2125.03.  No other statute expressly confers jurisdiction over the distribution of wrongful death settlement funds to another court or agency.

{¶ 16} As used in R.C. 2125.02 and 2125.03, the term "personal representative" means either the executor or administrator of the decedent's estate.  *Ramsey v. Neiman*, 69 Ohio St.3d 508, 512 (1994).  Probate courts appoint executors and administrators.  R.C. 2113.01; 2113.05; 2113.06.  Therefore, the probate court that appointed the personal representative has exclusive jurisdiction to order the distribution of proceeds resulting from the settlement of a wrongful death action.  *State Bur. of Workers' Comp. v. Mal-Sarkar*, 8th Dist. No. 101642, 2015-Ohio-1025, ¶ 16; *Comer v. Bench*, 2d Dist. No. 19229, 2003-Ohio-2821, ¶ 15; *see* Sup.R. 70(B) and (C) (stating that the probate court "shall retain jurisdiction over the settlement, allocation, and distribution of the [wrongful death and survival] claims," and "[c]ounsel fees shall be subject to approval by the [probate] court").

{¶ 17} Probate courts have broad authority to act with regard to matters within their jurisdiction.  *State ex rel. Chester Twp. v. Grendell*, 147 Ohio St.3d 366, 2016-Ohio-1520, ¶ 24.  According to R.C. 2101.24(C), "[t]he probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code."  Thus, with limited exception, R.C. 2101.24(C) endows probate courts with the authority to take whatever action is necessary to fully adjudicate any matter properly before them.  *In re Cletus P. McCauley & Mary A. McCauley Irrevocable Trust*, 5th Dist. No. 2013CA00237, 2014-Ohio-3489, ¶ 43; *In re Estate of Boone*, 190 Ohio App.3d 799, 2010-Ohio-6269, ¶ 37 (7th Dist.); *Bishop v. Bishop*, 188 Ohio App.3d 98, 2010-Ohio-2958, ¶ 12 (4th Dist.).

{¶ 18} Given this plenary power, a probate court exercising its jurisdiction to distribute wrongful death settlement proceeds has the authority to determine the amount of fees and costs, if any, owed to the various attorneys claiming recompense from those proceeds. *In re Kinross*, 84 Ohio App.3d 335, 340 (1st Dist.1992) (holding that the probate court had subject-matter jurisdiction over the fee dispute between the different counsel engaged to prosecute a wrongful death action that resulted in settlement). *See In re Guardianship of Jadwisiak*, 64 Ohio St.3d 176 (1992), paragraph one of the syllabus ("A probate court, in order to maintain control over any personal injury settlement entered into on behalf of a ward under its protection, has subject matter jurisdiction over the entire amount of settlement funds, which includes attorney fees to be drawn therefrom."); *Waterman v. Elk & Elk Co., LPA*, 96 Ohio App.3d 772, 776 (9th Dist.1994) (holding that the probate court tasked with approving the settlement of an action for personal injury to a ward possessed subject-matter jurisdiction to decide the fee dispute between the ward's former and current counsel).[2]  In the usual case, such authority is necessary for the probate court to fully distribute the settlement funds.  Logically, a probate court cannot determine the specific amounts due to the various claimants without first determining how much is owed to the attorneys seeking payment from the settlement funds.

{¶ 19} In the case at bar, the Cuyahoga County Probate Court, as the court that appointed James W. Slater as administrator, possessed exclusive jurisdiction over the distribution of the settlement proceeds.  Exercising its broad authority to accomplish that distribution, the probate court awarded $60,000 in attorney fees to Slater and Gilbert, and required Slater and Gilbert to pay Grubb for the fees and costs owed it under the charging lien.  Although the probate court did not determine the validity of Grubb's charging lien or the amount owed to it, the court did not need to do so to completely distribute the settlement proceeds.  The probate court relieved itself of the obligation to decide the issues surrounding Grubb's alleged charging lien by lifting the burden of satisfying the charging lien from the Estate and imposing it, instead, on Slater and Gilbert.  This shift in responsibility enabled the probate court to allocate every penny of the settlement funds and negate Grubb's claim to direct payment from those funds.  Thus, the probate court fully

---

[2]  Such authority does not extend to resolving fee-sharing disputes, which must be referred to mediation or arbitration.  *In re Estate of Southard*, 192 Ohio App.3d 590, 2011-Ohio-836, ¶ 25 (10th Dist.).

adjudicated the matter before it, even though it did not resolve the issues related to Grubb's alleged charging lien.

{¶ 20} With the probate court's exercise of jurisdiction completed, the Court of Claims had the necessary jurisdiction to address whether Grubb could collect from Slater and Gilbert the fees and costs it sought via a charging lien. Generally, until a judgment is finally executed, a court retains jurisdiction to hear any motion affecting the judgment, including motions seeking enforcement of an alleged charging lien. *Fire Protection Resources, Inc. v. Johnson Fire Protection Co.*, 72 Ohio App.3d 205, 209 (6th Dist.1991). Here, the Court of Claims retained jurisdiction subsequent to the entry of the probate court's distribution order because it had to approve the settlement and dismiss the wrongful death action. *See* R.C. 2743.15(A) (requiring "the approval of * * * the court of claims * * * [to] settle or compromise any civil action against the state"); L.C.C.R. 9 (implementing R.C. 2743.15(A) and requiring that, if a settlement does not receive the Court of Claims' approval, the matter must be set for trial). The Court of Claims, therefore, had the jurisdiction to consider the issues raised by Grubb's assertion of a charging lien. Indeed, such issues "should be worked out by application to the court holding the fund, and in which the services were rendered." *Olds v. Tucker*, 35 Ohio St. 581, 584 (1880). Accordingly, we overrule the Estate's first assignment of error.

{¶ 21} By the Estate's second assignment of error, it argues that the Court of Claims erred in granting Grubb's motion to intervene. We disagree.

{¶ 22} Pursuant to Civ.R. 24(A):

> [u]pon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Appellate courts review a decision granting or denying a motion to intervene for an abuse of discretion. *State ex rel. N.G. v. Cuyahoga Cty. Court of Common Pleas*, 147 Ohio St.3d 432, 2016-Ohio-1519, ¶ 21.

{¶ 23} No statute of this state provides an unconditional right to intervene to enforce a charging lien. *Petty v. Kroger Food & Pharmacy*, 165 Ohio App.3d 16, 2005-Ohio-6641, ¶ 9 (10th Dist.). In fact, no Ohio statute addresses charging liens in any respect. *Id.*; *Snider Interests LLC v. Cannata*, 8th Dist. No. 103659, 2017-Ohio-85, ¶ 19; *Mancino v. Lakewood*, 36 Ohio App.3d 219, 223-24 (8th Dist.1987). Therefore, Grubb had to satisfy the requirements of Civ.R. 24(A)(2) in order to intervene as a matter of right.

{¶ 24} Under Civ.R. 24(A)(2), a moving party must demonstrate: (1) it has an interest relating to the property or transaction that is the subject of the action; (2) it is so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; (3) its interest is not adequately represented by the existing parties; and (4) it moved to intervene in a timely manner. *Petty* at ¶ 8. A court should liberally construe these requirements to permit intervention. *Dept. of Adm. Servs. v. State Emp. Relations Bd.*, 54 Ohio St.3d 48, 51 (1990).

{¶ 25} In this case, the Estate maintains that Grubb had no interest in the subject matter of the wrongful death action that allowed it to intervene. Grubb claims that it possessed the necessary interest because its charging lien entitled it to a portion of the settlement proceeds. To resolve this argument, we must examine the law regarding charging liens.

{¶ 26} Under Ohio common law, an attorney who obtains a judgment or other monies for his client through his services can assert a charging lien against the fund obtained. *Kisling, Nestico & Redick, LLC v. Progressive Max Ins. Co.*, 8th Dist. No. 105287, 2017-Ohio-8064, ¶ 13; *Mathews v. E. Pike Local School Dist. Bd. of Edn.*, 4th Dist. No. 12CA832, 2013-Ohio-4438, ¶ 20; *Petty* at ¶ 11; *First Bank v. Roslovic & Partners, Inc.*, 10th Dist. No. 03AP-332, 2004-Ohio-2717, ¶ 41; *Mancino* at 223-24. A charging lien is:

> a claim or right to ask for the intervention of the court for [an attorney's] protection, when, having obtained a judgment for his client, he finds that there is a probability of the client depriving him of his interest in the fruits of that judgment. The lien of an attorney upon a judgment is an equitable lien, and is upheld simply upon the theory that his services and skill produced it.

*Walcutt v. Huling*, 5 Ohio App. 326, 331 (10th Dist.1913), *aff'd*, 92 Ohio St. 518 (1915). By means of a charging lien, "an attorney, by whose labor and at whose expense a judgment

has been obtained for his client, [has] an interest in that judgment which the law will regard and protect."  *Id.*

{¶ 27}  The Supreme Court of Ohio first addressed charging liens in 1880, when it determined that an attorney promised payment upon a favorable judgment had "such a relation to [the monetary award to the client] by reason of the services rendered in securing it, that a court of equity, in the exercise of its power over the fund, would be fully warranted in directing a reasonable compensation to be paid out of it."  *Olds*, 35 Ohio St. at 583.  The Supreme Court elaborated further two years later, stating that:

> an attorney may have a claim upon the fruits of a judgment or decree which he has assisted in obtaining, or upon a sum of money which he has collected, and under some circumstances courts will aid him in securing or maintaining such claim.  Thus he will be protected in retaining his fee out of money which he has collected for his client.

*Diehl v. Friester*, 37 Ohio St. 473, 477 (1882).  This early precedent culminated with *Cohen v. Goldberger*, 109 Ohio St. 22 (1923), where the Supreme Court held that:

> [t]he right of an attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment by him obtained, and is upheld on the theory that his services and skill created the fund.

*Id.* at paragraph one of the syllabus.

{¶ 28}  As reflected in these early cases, Ohio courts generally enforced a charging lien against a monetary judgment awarded to a client after an attorney successfully litigated a case on the client's behalf.  However, more recent precedent recognizes that a charging lien may also attach to settlement proceeds secured by an attorney's efforts.  *Ohio Willow Wood Co. v. Alps S., LLC*, S.D.Ohio No. 2:04-cv-1223, 2017 U.S. Dist. LEXIS 152350, 2017 WL 4217153 (Sept. 19, 2017); *Kisling, Nestico & Redick* at ¶ 15; *In re Guardianship of Chambers*, 6th Dist. No. S-07-014, 2007-Ohio-6881, ¶ 7.  Additionally, under the appropriate circumstances, an attorney may recover on a charging lien even if the client discharged the attorney prior to the creation of the fund from which the attorney seeks payment.  *Ohio Willow Wood Co.*; *Filius v. Outdoor Sports Headquarters, Inc.*, S.D.Ohio No. C-3-90-358, 1995 U.S. Dist. LEXIS 22176, 1995 WL 1612532 (May 18, 1995); *Cuyahoga*

*Cty. Bd. of Commrs. v. Maloof Properties Ltd.*, 197 Ohio App.3d 712, 2012-Ohio-470, ¶ 17 (8th Dist.).

{¶ 29} Whether attained by judgment or settlement, a fund must exist for a charging lien to arise. *In re Durkay*, 9 B.R. 58, 61 (Bankr.N.D.Ohio 1981); *Texlon Corp. v. Smart Media of Delaware, Inc.*, 9th Dist. No. 22543, 2005-Ohio-6223, ¶ 7. Under Ohio law, an attorney cannot have a charging lien on a client's cause of action. *In re Hronek*, 563 F.2d 296, 299 (6th Cir.1977); *accord Mancino*, 36 Ohio App.3d at 224, quoting 6 Ohio Jurisprudence 3d, Attorneys at Law, Section 183 (1978) (stating that " 'before judgment, an attorney has no lien upon or interest in the cause of action' "). Rather, an attorney can only assert a charging lien after a judgment, settlement, or other fund-creating event. *Petty*, 165 Ohio App.3d 16, 2005-Ohio-6641, at ¶ 13; *Ruttman v. Flores*, 8th Dist. No. 66079 (Dec. 1, 1994). "Without * * * a judgment or fund, there can be no attorney charging lien, as there is nothing upon which to attach this lien and any argument over the legal aspects of that lien become moot." *Telxon Corp.* at ¶ 8; *accord In re Richendollar*, Bankr.N.D.Ohio No. 04-70774, 2007 Bankr. LEXIS 1188, 2007 WL 1039065 (Mar. 31, 2007) ("[T]here is no [charging] lien until a fund is created in some manner, whether through judgment, arbitration or settlement, upon which the lien can attach.").

{¶ 30} In the case at bar, the Estate and ODRC orally agreed to settle the wrongful death action in late September 2016. By October 7, 2016, the Estate and ODRC had fully executed a written settlement agreement in which ODRC agreed to pay the Estate $150,000 in return for a release of claims. Grubb filed its renewed motion to intervene two weeks later, on October 21, 2016.

{¶ 31} On the date Grubb moved to intervene, the settlement agreement had yet to receive the approval of the Cuyahoga County Probate Court or the Court of Claims. However, we conclude that the executed settlement agreement sufficiently established the settlement fund for Grubb to assert a charging lien on it. Grubb, therefore, possessed the necessary interest in the wrongful death action to allow it to intervene. Accordingly, we overrule the Estate's second assignment of error.

{¶ 32} By the Estate's third assignment of error, it argues that the trial court erred in awarding Grubb any funds by virtue of the asserted charging lien. We agree. Grubb's charging lien fails for two reasons: (1) it asserted the charging lien against the entirety of

the settlement proceeds, rather than just those proceeds awarded to its clients; and (2) it failed to show that its services and skill created the settlement fund.

{¶ 33} Using its discretion, a trial court must decide whether to enforce a charging lien based on the facts and circumstances of the particular case. *Galloway v. Galloway*, 8th Dist. No. 103837, 2017-Ohio-87, ¶ 22; *Kerger & Hartman, LLC v. Ajami*, 6th Dist. No. L-14-1219, 2015-Ohio-5157, ¶ 23. A reviewing court will not reverse a trial court's decision to allow recovery under a charging lien unless the trial court abuses its discretion. *Galloway* at ¶ 22; *Ajami* at ¶ 25.

{¶ 34} Charging liens serve as a means by which an attorney may recover his or her fees and costs from a client or former client. *First Bank*, 2004-Ohio-2717, at ¶ 41 ("A charging lien in favor of an attorney is a lien upon judgment or other proceeds awarded to a client or former client."); *Putnam v. Hogan*, 122 Ohio App.3d 351, 354 (10th Dist.1997) ("An attorney may * * * have a special, or charging lien upon a judgment, decree, or award obtained for a client."). Thus, if an attorney lacks an attorney-client relationship with a party awarded a judgment or other monies, an attorney has no basis on which to assert a charging lien on the judgment or monies.

{¶ 35} Here, Grubb sought to impose a charging lien on a settlement fund awarded to the Estate, which Grubb never represented, despite its representations to the contrary. Consequently, at least superficially, Grubb did not have grounds to claim a charging lien on the settlement fund. Grubb, however, contends that it could assert a charging lien on the settlement fund because the Ferraras, its clients, were statutory beneficiaries and ultimately entitled to the settlement proceeds.

{¶ 36} Under Ohio law, the proceeds from a settlement of the wrongful death action are the property of the statutory beneficiaries. *State ex rel. Goldberg v. Mahoning Cty. Probate Court*, 93 Ohio St.3d 160, 164 (2001) (stating that proceeds from a wrongful death action are "the actual property of the statutory beneficiaries" and are part of the decedent's estate "in a limited or qualified sense only"). Here, therefore, the four statutory beneficiaries—the Ferraras and Michael Ferrara, Jr.'s two brothers—owned the settlement proceeds. Because Grubb had only represented two of the four statutory beneficiaries, it could not assert a charging lien on the entirety of the settlement fund. Such a charging lien cannot exist because it would wrongfully require two non-clients to contribute to the

payment of Grubb's fees and costs. Absent an attorney-client relationship with all four statutory beneficiaries or the Estate, Grubb could not recover its fees and costs through a charging lien on the whole settlement fund.

{¶ 37} Grubb's charging lien also fails due to the negligible impact of the legal work it provided. As we explained above, an attorney's right to collect fees and costs through a charging lien "rests on the equity of such attorney to be paid out of the judgment by him obtained, and is upheld on the theory that his services and skill created the fund." *Cohen*, 109 Ohio St. at paragraph one of the syllabus. Thus, a court will only exercise its equitable powers to enforce a charging lien if an attorney demonstrates that his services and skill created the fund from which he seeks payment. *Petty*, 165 Ohio App.3d 16, 2005-Ohio-6641, at ¶ 11; *First Bank* at ¶ 50.

{¶ 38} Importantly, an attorney cannot recover on a charging lien merely because the fund at issue would not exist but for his work. *Petty* at ¶ 20; *First Bank* at ¶ 50. This court repudiated the "but for" test because "any one participant in a combined legal effort, no matter how remote their contribution, could stretch a 'but for' standard to invoke a charging lien." *First Bank* at ¶ 50. Instead of adopting the broader "but for" test, we strictly applied the standard set forth in *Cohen*: whether the attorney created the fund at issue with his service and skills. *Id.*; *accord Mathews*, 2013-Ohio-4438, at ¶ 21 ("Courts have strictly applied the requisites spelled out in the syllabus of *Cohen*, noting that this interpretation is preferable to a 'but for' test, which would allow even minimal or remote contribution to justify a charging lien."); *Maloof Properties*, 197 Ohio App.3d 712, 2012-Ohio-470, at ¶ 16 (same).

{¶ 39} Here, Grubb mainly engaged in pre-complaint fact finding and document gathering. Neither Grubb nor the litigation consultant it hired participated in the actual litigation of the wrongful death action. According to Gilbert, nothing Grubb accomplished contributed to the prosecution of the wrongful death action or the negotiation of the settlement. Given the inconsequential nature of Grubb's involvement, we cannot conclude that Grubb created the settlement fund. Therefore, equity does not support allowing Grubb to recover from the settlement fund through the asserted charging lien. Accordingly, we sustain the Estate's third assignment of error.

{¶ 40} By Grubb's two assignments of error, it complains about the amount of attorney fees and costs awarded to it. In sustaining the Estate's third assignment of error, we have determined that the trial court erred in granting Grubb any payment out of the settlement fund. Thus, our ruling on the Estate's third assignment of error renders moot Grubb's assignments of error, and we will not rule upon them.

{¶ 41} For the foregoing reasons, we overrule the Estate's first and second assignments of error, and we sustain the Estate's third assignment of error. Our ruling on the Estate's third assignment of error moots Grubb's two assignments of error. We reverse the judgment of the Court of Claims of Ohio.

*Judgment reversed.*

SADLER and BRUNNER, JJ., concur.

_____