[Cite as *Lucas v. Ohio St. Bd. of Edn.*, 2021-Ohio-3902.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Megan Lucas et al., | : | |
| Appellants-Appellees, | : | |
| | | No. 21AP-138 |
| v. | : | (C.P.C. No. 20CV-7962) |
| Ohio State Board of Education, | : | (ACCELERATED CALENDAR) |
| Appellee-Appellee, | : | |
| [Jefferson Township Local School District Board of Education, | : | |
| | : | |
| Appellant]. | : | |
| | : | |

D E C I S I O N

Rendered on November 2, 2021

**On brief:** *Subashi, Wildermuth & Justice* and *Tabitha Justice*, for appellant Jefferson Township Local School District Board of Education.[1]

APPEAL from the Franklin County Court of Common Pleas.

MENTEL, J.

{¶ 1} Jefferson Township Local School District Board of Education ("Jefferson Township") appeals from the decision and order denying its unopposed motion to intervene filed March 1, 2021. For the reasons that follow, we reverse.

---

[1] Appellee Ohio State Board of Education declined to file a brief in this case. Appellees Megan E. Lucas, et al., by and through counsel, notified the court that they did not intend to file a substantive brief in the case and will defer to the reasoning expressed by the trial court in its March 5, 2021 Decision. (May 13, 2021 Notice.)

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}    The facts and procedural history of this case were set forth in *Lucas, et al. v. Ohio State Bd. of Edn.*, 10th Dist. No. 19AP-463, 2020-Ohio-2738 ("*Lucas* I"). This court wrote:

> In March 2018, Megan Lucas and other concerned residents of the Jefferson school district petitioned the state board for the transfer of the roughly nine square miles of school district territory from Jefferson to Valley View pursuant to R.C. 3311.24. The Ohio Department of Education appointed a hearing officer to review the matter.
>
> In January 2019, after holding a two-day evidentiary hearing on the territory transfer request, the hearing officer issued her rather detailed report and recommendation. She found, among other things, that the proposed transfer area is owned by fewer than ten families and that of the 25 or so school-age children who live there, only "four or five of these children appear to attend Jefferson schools." Report and Recommendation at ¶ 18, 20-21. After critiquing Jefferson's performance ("[a]s of October 2018," for example, "Jefferson had not finalized its students' schedules for the 2018-2019 school year," *id.* at ¶ 43) and contrasting it unfavorably with Valley View's much better job on state report cards and graduation rates, she reviewed transfer factors identified in Ohio's Administrative Code and assessed the issues raised by the parties.
>
> "Valley View provides a better assortment of higher caliber classes and activities to its students than Jefferson does," she observed, and she gave "great weight" to the fact that "[t]he predominant [agricultural] vocation of the residents of the Territory [proposed for transfer] is not being addressed by Jefferson," which unlike Valley View does not offer agriculture classes and 4H programs. *Id.* at page 11. She also noted that "[n]o evidence has been presented that racial animus was a factor in this transfer request," and that Jefferson had stated that the transfer would not have more than a de minimis effect on the racial composition of its schools. *Id.* at 10-11. While "Jefferson claims an alleged tax revenue loss of $456,552.00 [annually] and an alleged valuation loss of $13,600.00 [sic: should be $13,600,000.00]," the district did not provide any "specific examples" of how that revenue loss would adversely affect its students, she said, and the district's 2017 revenues had outpaced its expenses by more than $800,000. *Id.* at 12.

"Jefferson has been in overall disorder for many years," the hearing officer concluded, "even with the revenue from the Territory. * * * * [T]he decreasing student population, accounting issues and the turnover/retention of administration/staff have continued to be issues. This transfer will not change the issues that have challenged Jefferson." *Id.* at 14. On the other side of the equation, the residents proposing transfer "have been concerned about their children's educational opportunities for many years." And "[t]he educational opportunities available to the students in the Territory [at issue] * * * will be vastly improved by the granting of this transfer." *Id.* In sum, she recommended that the state board grant the petitioners' request. *Id.*

Jefferson submitted objections to the hearing officer's report and recommendation, reciting that the transfer would have "immense emotional and financial impact * * * on Jefferson's stakeholders." Objections at 1. Among other things, and using what may seem odd locution for an educational enterprise, Jefferson argued that "petitioners * * * presented tangible evidence related to the best interest of **only two children** [sic, and emphasis in original] within the disputed territory." *Id.* at 2. The transfer would have racial isolation implications, they argued, and would not be in the best interests of the students remaining in the district; whether movement of students should be permitted must turn in part on those children's hypothesized race, the objections contended, because boundary changes affect students district-wide. *Id.* at 2-4. Moreover, "Valley View would be acquiring over $450k in tax revenues while assuming the duty to educate 2 to 5 children. This disproportionality clearly does not weigh in favor of a transfer." *Id.* at 7. And "better educational programming in one district for two specific children is not 'overwhelming' evidence supporting the transfer [of] nine square miles of territory." *Id.* at 9.

Jefferson's objections also noted that the district's superintendent had testified that revenue losses would result in programming cuts, and responses from the treasurer reflected a threat of hemorrhaging deficits. *Id.* at 10. Additionally, Jefferson submitted, petitioners had failed to explain "why nine square miles needs to be transferred when a much smaller transfer would accomplish the same alleged goal [of helping transferring students]." *Id.* at 11. As to agricultural offerings, "[t]here was no evidence presented regarding any courses taken by any specific students that would not be available should those students attend Jefferson or another

district through open enrollment." *Id.* at 13. "Finally, the hearing officer did not even address proximity of the transferred property to the receiving school district, which is a factors [sic] set forth in OAC 3301-89- 02(B)(13) and (14)." *Id.* (with map at 14).

The state board met to consider the transfer petition on February 11, 2019. The minutes of that meeting reflect that after the recommendation was presented to the board, three individual board members advocated rejecting the hearing officer's recommendation and disapproving the transfer. Each of the three advanced different and separate reasons for that position: one "stated her main concern was that a segregated area would be even more segregated if the transfer were to be allowed," and also noted that "only four to five students would be affected in an almost nine-mile area"; one "noted the 14 percent loss of the budget"; and one "stated concerns with setting precedent [because] petitioners knew what district the house they purchased was in." February 11, 2019 State Board Minutes at 19.

By a vote of 10-7, the board then voted to reject the recommendation of the hearing officer and disapprove the transfer "in light of the persuasiveness of Jefferson Local School District's objections." *Id.* at 20. The resolution itself contained no other explanation for the board's rejection of the hearing officer's recommendation. *Id.*

The petitioners appealed the state board's determination to the Franklin County Court of Common Pleas pursuant to R.C. 119.12.[2] With briefing complete, the trial court began its decision with a succinct procedural overview and observed that before "seeking the land transfer, [the petitioners had] attempted to work with the Jefferson School Board to improve the district, including one appellant serving on the school board." Decision and Entry at 1. The trial court then recited that R.C. 119.12(M) provides: "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in

---

[2] While not at issue in *Lucas* I, the trial court granted Jefferson Township's unopposed motion to intervene in the case. (May 29, 2019 Entry.)

accordance with law." *Id.* at 2-3 (then citing *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 212, 2008-Ohio-4826, 897 N.E.2d 1096, for instructions including that while the court should give deference to agency findings of fact, the court itself determines questions of law).

The trial court then turned to our decision in *Residents of Baldwin Rd. v. State*, 10th Dist. No. 02AP-257, 2002-Ohio-5522. As the trial court noted, see Decision and Entry at 3-4, we said there that "[w]hile the Board is not required to accept a referee's recommendation to grant or deny a requested transfer, when the Board rejects a recommendation, there is a presumption that only the specific grounds listed by the Board provided the basis for the decision, with other possible grounds being rejected. However, where nothing in the Board's resolution addresses or contradicts the referee's conclusion that the students would be better served by the transfer, the Board's decision is not supported by reliable, probative and substantial evidence." 2002-Ohio-5522 at ¶ 16, citing *Schreiner v. State Bd. of Edn.*, 10th Dist. No. 98AP-1251 (Nov. 9, 1999). The trial court continued by reciting that the state board's rejection of a hearing examiner's recommendation in Baldwin Rd. had been for an expressed reason that was appropriately overturned as "counter to evidence presented that showed the transfer [considered there] only affected one child and the economic impact was de minimis." Decision and Entry at 4.

In this case, too, the trial court said, the state board "ignored the evidence found by the Hearing Officer supporting the transfer and instead relied on speculation and non-statutory factors." *Id.* The trial court then noted that three (of the seventeen) voting board members each had voiced one (different) concern, and the trial court reviewed each and found each to lack any reliable, probative, and substantial support in the record. *Id.* at 4-6. "The Hearing Officer's decision was based on reliable, probative, and substantial evidence," the trial court concluded. *Id.* at 6. "Thus, without specific grounds addressing or contradicting the recommendation of the Hearing Officer, the Board's decision is not based on reliable, probative and substantial evidence." *Id.* The trial court reversed the order of the state board and proceeded to grant the territory transfer request. *Id.*

Jefferson—but not the state board—appeals.

(Empasis sic.) *Lucas* I at ¶ 3-14.

{¶ 3} On April 30, 2020, this court reversed the trial court's decision and remanded the case with instructions to the Ohio State Board of Education ("BOE") for further determination to set forth "appropriate, reviewable, consideration of the hearing officer's report and disposition of the transfer petition." *Id.* at ¶ 36. On November 10, 2020, the BOE rejected the hearing officer's recommendation to transfer territory from Jefferson Township to Valley View Local School District.[3] Pursuant to R.C. 119.12, the case was appealed to the Franklin County Court of Common Pleas. On March 1, 2021, Jefferson Township filed an unopposed motion to intervene in the administrative appeal. On March 5, 2021, the trial court denied the motion to intervene concluding that Jefferson Township's rights were adequately represented by the BOE. On March 12, 2021, Jefferson Township filed a motion for reconsideration. On March 24, 2021, the trial court denied the motion for reconsideration. The trial court wrote, "if Jefferson Township disagrees with this Court's decision on intervention, Jefferson Township is welcome to appeal." (Mar. 24, 2021 Order.)

{¶ 4} On April 5, 2021, Jefferson Township accepted the trial court's invitation and filed a notice of appeal.

## II. ASSIGNMENT OF ERROR

{¶ 5} Jefferson Township assigns the following as trial court error:

> The trial court erred in denying Appellant's motion to intervene in the underlying administrative appeal.

## III. LEGAL ANALYSIS

### A. Jefferson Township's Sole Assignment of Error

{¶ 6} In Jefferson Township's sole assignment of error, it argues that the trial court erred in denying its motion to intervene in the underlying administrative appeal.[4]

---

[3] The order of the BOE was mailed to all parties on November 27, 2020.

[4] As an initial matter, this court has consistently found that the trial court's denial of a motion to intervene under Civ.R. 24(A) constitutes a final, appealable order. *Ohio Community School Consultants, Ltd. v. Lincoln Preparatory Academy, Inc.*, 10th Dist. No. 19AP-301, 2020-Ohio-890, ¶ 18, citing *In re D.T.*, 10th Dist. No. 07AP-853, 2008-Ohio-2287, ¶ 8 ("An order denying a motion to intervene constitutes a final appealable order."); *Blackburn v. Hamoudi*, 29 Ohio App.3d 350 (10th Dist.1986). Other district courts have reached the same conclusion. *See, e.g., Schaffer v. Jones*, 1st Dist. No. C-160684, 2017-Ohio-7730 (finding the trial court's order denying the proposed intervenors' motion under Civ.R. 24(A) is a final, appealable order under R.C. 2505.02); *Sabbato v. Hardy*, 5th Dist. No. 2001CA00045, 2001 Ohio App. LEXIS 3328, *4 (2001) ("the trial court's entry, denying [appellant's] motion to intervene, is a final appealable order."). Accordingly, the

{¶ 7} We review a trial court's denial of a motion to intervene under an abuse of discretion analysis. *State ex rel. N.G. v. Cuyahoga Cty. Court of Common Pleas*, 147 Ohio St.3d 432, 2016-Ohio-1519, ¶ 21, citing *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, ¶ 41. A trial court abuses its discretion when its ruling is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "An unreasonable decision is one that is unsupported by a sound reasoning process." *Lias v. Beekman*, 10th Dist. No. 06AP-1134, 2007-Ohio-5737, ¶ 12, citing *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶ 8} Pursuant to Civ.R. 24(A), a moving party may intervene as a matter of right when:

> (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

{¶ 9} In order to intervene under Civ.R. 24(A)(2), the applicant must demonstrate "(1) it has an interest relating to the property or transaction that is the subject of the action; (2) it is so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; (3) its interest is not adequately represented by the existing parties; and (4) it moved to intervene in a timely manner." *Slater v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-453, 2018-Ohio-1475, ¶ 24, citing *Petty v. Kroger Food & Pharmacy*, 10th Dist. No. 05AP-592, 2005-Ohio-6641, ¶ 8. It is well-established law that courts are to apply a "liberal construction generally accorded Civ.R. 24 in favor of intervention" if its "mandatory procedural requirements" are satisfied. *State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections*, 80 Ohio St.3d 182, 184 (1997).

{¶ 10} In the present case, the trial court's analysis singularly focuses on the third element regarding whether Jefferson Township's interests are adequately represented by existing parties. It is the burden of the moving party to demonstrate that its interest will

---

trial court's denial of the motion to intervene is a final, appealable order jurisdictionally sufficient for appellate review.

not be effectively protected by the other parties.  *Yeater v. Bob Betson Ents.*, 7th Dist. No. 04-BE-46, 2005-Ohio-6943, ¶ 30, citing *Tomcany v. Range Constr.*, 11th Dist. No. 2003-L-071, 2004-Ohio-5314, ¶ 30, citing *Valley Asphalt Corp. v. Frame-Henson Asphalt Paving, Inc.*, 2d Dist. No. 88-CA-74, 1989 Ohio App. LEXIS 1327, *8 (Apr. 10, 1989).  When resolving whether an intervenor's interests are adequately represented by existing parties, the trial court should consider:  "(1) whether the interests of a present party are sufficiently similar to that of the movant such that the legal arguments of the latter will be made by the former; (2) whether the present party is capable and willing to make those arguments; and (3) if permitted to intervene, whether the intervenor would add some necessary element to the proceedings that would not be covered by the present parties." *Yeater* at ¶ 30, citing *Tomcany* at ¶ 30, citing *Valley Asphalt Corp.* at *9.  Ohio courts, however, have recognized that this burden is minimal.  *Yeater* at ¶ 30; *Tomcany* at ¶ 30; *Valley Asphalt Corp.* at *8.

{¶ 11}  In *Lucas* I, the trial court granted Jefferson Township's unopposed motion to intervene in the case.  (May 29, 2019 Entry.)  Now, for no discernable reason, the trial court concluded Jefferson Township's interests are adequately represented by the BOE.  While there is no doubt that the BOE's and Jefferson Township's interests are aligned, the BOE has made it clear through the course of this litigation that it is either not capable or not willing to defend those interests.  As acknowledged in the BOE's trial court brief, the defense against the proposed land transfer from the start has fallen on Jefferson Township.  "Petitioners were in favor of the transfer; Jefferson was not. * * * [The BOE] took no official position on the matter and simply submitted procedural exhibits for the administrative record."  (Mar. 3, 2021 BOE Brief at 3.)  Jefferson Township notes that if it had not been permitted to intervene in *Lucas* I, the territory at issue would have already transferred.  This point is well taken.  When the trial court issued its first adverse decision, it was Jefferson Township, not the BOE, that successfully appealed to this court.  It is also telling that the BOE, again, declined to file an appellate brief in this case explaining its position.

{¶ 12}  If permitted to intervene, Jefferson Township, as it did in *Lucas* I, would be able to defend against the transfer of territory and, if the trial court's ultimate ruling in the case is adverse to its interest, bring an appeal.  As the BOE has declined to consistently participate in this case, Jefferson Township will undoubtedly bring a necessary element to the litigation as a defense against the proposed land transfer.  Given the facts and

procedural history of the parties, as well as established precedent that Civ.R. 24(A) is to be liberally construed in favor of intervention, the trial court's denial of Jefferson Township's motion to intervene constitutes an abuse of discretion.

{¶ 13} In reaching its decision to deny Jefferson Township's motion to intervene, the trial court based its decision solely on the erroneous determination that Jefferson Township's interests were adequately represented by existing parties and did not address the remaining three factors required to grant a motion to intervene. Accordingly, the appropriate remedy is to remand the case to the trial court to complete this analysis. For these reasons, we remand the case for the trial court to resolve the remaining factors relevant to Jefferson Township's motion to intervene.

{¶ 14} Based on the foregoing reasons, Jefferson Township's sole assignment of error is sustained.

## IV.  CONCLUSION

{¶ 15} Having sustained appellant's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas, and the case is remanded for further proceedings in accordance with this decision.

*Judgment reversed;*
*case remanded.*

BROWN and SADLER, JJ., concur.

_____